### BOISSAC v. KLEINPETER.

### No. 2002.

Court of Appeal of Louisiana. First Circuit.

Oct. 4, 1939.

Rehearing Denied Nov. 9, 1939.

· Blanche, Hebert & Wilson, of Baton Rouge, for appellant.

Laycock & Moyse, of Baton Rouge, for appellee.

OTT, Judge.

The suit is for damages in the sum of $14,250.80 on account of injuries received by the plaintiff on May 8, 1937, at about 11:30 P. M. at the intersection of Weller Avenue and the Plank Road when he was struck by an automobile driven by the defendant, coming South on the Plank Road into the City of Baton Rouge. Plaintiff sustained a comminuted fracture of both bones of his left leg below the knee, as well as severe bruises and lacerations on other parts of his body. The judgment below dismissed his suit and he has appealed.

The Plank Road runs practically north and south and has the usual 18 foot pavement. Weller Avenue intersects the Plank Road from the west and is black-topped. There is a filling station at the southwest corner of the intersection, facing in a northeasterly direction and diagonally with the Plank Road. There is a pavement in front of the filling station extending out to the Plank Road to the east and to Weller Avenue to the north. The southeastern corner of the filling station is about 15 feet from the western edge of the pavement on the Plank Road, and the northwestern corner of the station is about the same distance from the edge of the pavement on Weller Avenue.

It is the contention of the plaintiff both in his petition and in his testimony that he came out Weller Avenue from the west to the filling station and walked up to the edge of the pavement on the Plank Road in front of the filling station a short distance below the intersection with the intention of crossing over to the east side of the road; that as he got to the pavement of the road, he saw a car coming from the north and he then stepped back two or three steps from the edge of the road onto the shoulder (or rather onto the

pavement in front of the filling station which would be the shoulder of the road if there were no pavement in front of the station); that he was struck by this car coming from the north and which was being driven by the defendant, just as he stepped back from the edge of the road; that he was two or three steps back from the edge of the road when the car struck him with its front part and while the car was completely off the paved road, with its left side two or three steps from the edge of the road.

Plaintiff was knocked down and he testified that the car stopped with the left front wheel on his leg. There are other details and some unimportant discrepancies in the testimony of plaintiff as to the manner in which the accident occurred, but the important part of his contention is that he was struck by defendant's car while he was completely off the traveled part of the road. If the accident occurred as claimed by the plaintiff and as outlined from his testimony, there could be no question of defendant's liability.

The only other testimony to corroborate plaintiff's version of the accident as to the place where he was struck is the testimony of his nephew with whom he was staying and that of a young lady. These two witnesses testified that they stopped at the scene of the accident the following morning around six o'clock on their return from church and found blood stains on the pavement in front of the filling station two or three steps from the edge of the pavement of the road.

The contention of the defendant as to how and where the accident happened is quite different from that of the plaintiff. The defendant, who was a deputy sheriff, testified that he was bringing a man who had been arrested at a night club to Baton Rouge; that he was accompanied by another man from the Club named Summers; that as he approached the intersection, he saw plaintiff standing three or four feet from the edge of the road when he (defendant) was some 80 feet from plaintiff who was some 20 to 25 feet below the intersection; that he (defendant) was driving 25 to 30 miles per hour, and when he got within 20 to 25 feet of plaintiff, the latter suddenly started across the road in a fast walk in front of his car; that he applied his brakes and pulled his car to the right to avoid striking plaintiff, and would have avoided him had plaintiff continued on across the road; that when plaintiff had gotten out to about the center of the road, he stepped or jumped back in front of the car and struck the left headlight and bumper and was knocked down on the left side of the car; that the car was stopped within two or three feet after striking plaintiff, and he denies that the left wheel was on defendant's leg when the car stopped.

It will be seen at a glance that the principal difference in the versions given by plaintiff and defendant of the accident relates to the place where the impact occurred—the former stating that it happened off the road, while the latter claims that it happened on the traveled part of the road. Defendant is corroborated as to the place where the accident occurred by both Summers and the prisoner who were in the car with him. The learned trial judge found from his analysis of the evidence that the collision occurred on the road and in the manner claimed by the defendant and the two men in the car with him.

Realizing their inability to point out manifest error in the finding of the trial judge as to the place of the collision and the manner in which it occurred, learned counsel for plaintiff have practically conceded that the plaintiff's right of recovery is restricted to the question of whether or not defendant had the last clear chance to avoid the accident and failed to do so. The doctrine of last clear chance was not pleaded in the petition but is now invoked on the ground that the evidence shows that plaintiff was drunk and wobbled and staggered up to and across the road in front of defendant's car, and that his condition was seen or could have been discovered in time to cause defendant to take extra precautions and avoid the accident.

Counsel for defendant contest the right of plaintiff to invoke the last clear chance doctrine as it was not pleaded, however, as defendant pleaded contributory negligence on the part of plaintiff in the alternative, and as evidence of plaintiff's condition and capacity was admissible under the issues raised by the pleadings, the court has the right to consider all the relevant evidence in the case, and if the facts show a right of recovery under the doctrine, it may be applied even though not pleaded. Iglesias v. Campbell, La.App., 175 So. 145. The trial judge considered the doctrine of last clear chance but found that plaintiff was not entitled to recover

under an application of that doctrine to the facts of this case.

The primary question is not the extent of intoxication of plaintiff when he attempted to cross the road in front of defendant's car, but the important question is as to what indications of drunkenness and incapacity his actions gave, or should have given, to the driver of the car. The three men in the car, including defendant himself, testified that when they picked up plaintiff from the road, he was drunk—that is the plaintiff himself said he was drunk. The plaintiff testified, however, that he was not drunk, but had only taken two or three bottles of beer some two or three hours before the accident. The defendant testified that he could not tell if plaintiff was drunk; that he was going by what plaintiff said when he was picked up.

Plaintiff's counsel rely principally on the testimony of Summers, defendant's witness, to show that plaintiff's drunken condition was apparent when defendant's car was 60 or 80 feet from him, and in ample distance to bring the car under control. This witness testified that when he saw plaintiff the latter was standing two or three feet from the edge of the road with his head kind of drooped and wobbling and staggering like a drunk man; that when defendant got within 20 or 25 feet from plaintiff, the latter staggered out into the road with a kind of running start and the defendant immediately applied his brakes when plaintiff staggered out into the road; that that was the first time that defendant applied his brakes, and plaintiff backed into the car from near the middle of the road.

Summers is the only witness who testified that plaintiff's drunken condition could be seen for 60 to 80 feet as the car approached. It is argued that as Summers, who was sitting beside defendant in the car, saw plaintiff staggering and wobbling by the side of the road a sufficient distance ahead for the car to be brought under control, the defendant also should have discovered his condition and taken the necessary precautions to meet the emergency that would likely arise from a drunken and staggering man attempting to cross the road. Under this situation, plaintiff seeks to have the doctrine of last clear chance applied in this case as it was announced and applied in the recent case of Jackson v. Cook, 189 La. 860, 181 So. 195.

As already stated, defendant did not observe any staggering and wobbling on the part of plaintiff and the plaintiff himself testified that he was not drunk and was not staggering across the road. To accept the testimony of Summers on this point we would have to disregard that of both plaintiff and defendant on the same point. The trial judge refused to accept the testimony of Summers on this point, and we see no reason to disagree with his finding. In concluding his findings the trial judge says: "In this case I am of the opinion that Boissac who was not obviously drunk was standing in a place of safety; that he saw or should have seen Kleinpeter's car approaching the intersection, but that at an inopportune time he went out into the road in front of the car; that after getting into the road and feeling he couldn't make it across stepped back into the Kleinpeter car and was thus injured. The testimony in my opinion, sustains Kleinpeter in his statement that when he saw Boissac go into the road ahead of him, he slackened his speed and applied his brakes and pulled to the right to avoid hitting plaintiff, but the collision was unavoidable for the reason that Boissac instead of going on across the road turned back into the car which had been turned to the right to avoid hitting him."

In our opinion, the case of Jones v. American Mutual Liability Ins. Co. et al., La.App., 189 So. 169, on rehearing, has peculiar application to the present case. In that case, as in this case, the plaintiff failed to prove by a preponderance of the evidence that the motorist should have seen the injured person in time to prevent the accident. In applying the doctrine of last clear chance in those cases where the motorist is charged with seeing what he should have seen and did not see, the facts and circumstances should clearly show that the motorist could have discovered the perilous position of the plaintiff by the use of reasonable care and caution.

For the reasons assigned, the judgment appealed from is hereby affirmed.