LeBLANC, Justice.
 

 This is an action in tort arising out of an accident which happened in the City of Houma on December 16, 1947 in a collision between a bicycle which was being operated by a young man named Floyd Bergeron and a dump truck belonging to the Department of Highways of the State of Louisiana, being driven at the time by one of the Department’s employees, Jeffrey LeBoeuf. The suit was instituted by the young man’s, father seeking to recover damages for himself in the way of expenses incurred in the treatment of his son who was seriously injured and a large amount of damages for personal injuries for and on behalf of his said son.
 

 As a result of trial in the District Court, judgment went against the plaintiff and in favor of the defendants, dismissing -the suit. On appeal to the Court of Appeal for the First Circuit, by a divided court, the judgment of the district court was reversed and damages were awarded in favor of the plaintiff. See 50 So.2d 337, 338. Because of the doubt we entertained on the applicability of the rule of the last clear chance by the Court of Appeal, defendants’ application for writs of certiorari was granted and the whole case is now before us for review.
 

 In the main, both the District Court and the Court of Appeal agreed on the facts in the case and it was with respect to a few minute details in computing the respective speed of the truck and the bicycle and the distance it takes to stop a vehicle such as this truck, traveling at certain rates of speed, that they disagreed.
 

 As did both courts, we find it important that the locus of the accident be described. It is reproduced in detail upon a plot or sketch drawn by Robert H. Wright, C. E., which was introduced in the record as a joint exhibit by the parties. With this exhibit before it the Court of Appeal described it as follows:
 

 “West Main Street in the City of Houma (also State Route No. 69)
 
 *600
 
 runs east and west and consists of an 18 foot concrete slab built by the State and two concrete slabs each 9 feet in width on each side thereof built by the City of Houma, making in all a 36 foot paved street. On the south side of the street there is a 5.5 foot concrete sidewalk abutting the pavement mentioned above. The sidewalk is not curbed and is on the same general level as the street. The evident reason for the construction of the sidewalk in such fashion is that immediately to its south is the freight yard of Morgan’s Louisiana and Texas Railroad, which fronts thereon for a distance of approximately 160 feet. Five spur tracks traverse the sidewalk and street within this distance. It is clear from the evidence that for a number of years trucks and other vehicles have used this entire frontage as a means of ingress and egress to and from the yards to the freight cars spotted thereon.”
 

 With that location in mind we proceed to examine the facts in the case which are as follows: Young Bergeron, about 15 years old, was returning home from Terrebonne High School on his bicycle at about 4:00 o’clock in the afternoon. The high school is located on Highway No. 69, which leads from out of the City of Houma to Thibodaux, a short distance from the scene of the accident.
 

 Both courts agree, in view of the allegations of the petition, although there was an attempt made to introduce testimonj'- to the contrary, that he was riding his bicycle on that part of the street referred to on the map as the 5.5 foot concrete sidewalk. At the time of the accident, and shortly before, a truck belonging to Patterson Mud and Chemical Company was in the process of being hooked on to a railroad car, on spur track No. 4 which it was going to tow across Main Street and locate at their warehouse which is situated north of the street. The truck itself at the time we are speaking of was facing north and both courts agree that the front portion extended over and across the sidewalk along which young Bergeron was riding his bicycle. At the time when he was approaching the Patterson truck the highway truck had reached that part of the street where the driver intended to make a left hand turn in order to go into the area of the railroad yard as at that time the highway department was hauling gravel from that area. The driver proceeded to make his turn and after he had reached a point where the front end of his truck was crossing over the sidewalk, the young man on the bicycle ran into the front part of the right front fender of the truck. He was thrown from his bicycle which went forward a few feet and he fell under the truck. Before it could be brought to a stop, the rear right wheel ran over him causing him the injuries he sustained. When the truck came to a stop- he was about two feet behind it.
 

 
 *602
 
 Both courts found that young Bergeron was grossly negligent in not looking where he was going and not observing the highway truck in front of him as it made its turn. Both courts also found that the truck driver was not negligent at the time he began making his left hand turn, at which time the bicycle was not visible to him since it was still back of the front part of the Patterson truck. As there was no other traffic to impede his progress in making the turn he was safe in starting to do so.
 

 The trial judge then comments upon the possibility of the driver of the truck averting the accident once he had started to make the turn, and in order to reach the conclusion he did, he goes into some detail about the respective speed of the two vehicles, the distance they were from each other and from the point of contact. He also comments on the time required for reaction and for the application of brakes by an automobile driver under the circumstances, from all of which he determined that even though the bicycle had come or may have come within that truck driver’s vision after he started to make the turn it would have been impossible for him to avoid the accident. The trial judge concluded that from thence on, the truck driver’s only logical course was to pursue and persist in making the turn and in giving most of his attention to the direction in which his truck was traveling, that is, ahead of him.
 

 The Court of Appeal, in expressing its disagreement with the district judge on the point of the truck driver’s duty after he began making his turn, also based its judgment largely upon a calculation of relative speeds and of distances. They concluded that while he was in the process of making the turn, hád he, as he could have, directed his attention forward, he would have seen the bicycle emerging from around the Patterson truck in time to have discovered the rider’s danger. Had he then taken proper precaution considering the speed of both vehicles and the time that it would take him to stop his truck at the speed it was going, he would have avoided the accident. Thus, the court found that the last clear chance was with the driver of the truck and consequently plaintiff was entitled to recover.
 

 This court has had occasion within recent years to consider the rule of “discovered peril and last clear chance” in connection with accident cases. The first occasion was in the case of Rottman v. Beverly, 183 La.
 
 947,
 
 165 So. 153, 156, and the second in Jackson v. Cook, 189 La. 860, 181 So. 195, 197.
 

 Prior to the Rottman case the jurisprudence, as pointed out in that case, was to the effect that the last clear chance doctrine will not be extended to cases where the plaintiff’s own negligence continued up to the moment of and actually contributed to the accident.' The court apparently did not reject that doctrine for it stated that a
 
 *604
 
 reading of the cases in which it was held that a plaintiff could not recover under such circumstances, would “show that in nearly every instance * * * the facts disclosed that the negligence of the defendant consisted of a failure to discover the perilous position in which the plaintiff had negligently placed himself.” But, it also stated, that “if a plaintiff negligently puts himself in a place of danger and his negligence and danger are actually discovered by the defendant, then there devolves upon the defendant a duty which intervenes or arises subsequent to the negligent acts of the plaintiff, and that ■ duty is to save the plaintiff from the consequences of his negligent acts if he can.” The court then pointed out the duty of those who operate engines or motor vehicles and that duty, as stated: was “to keep a sharp lookout ahead to discover the presence of those who might be in danger.” Under circumstances or facts where the negligence of both parties continued up to the time of the accident, it was held that the plaintiff nevertheless could recover where the defendant actually discovered his perilous position and could have avoided injuring him if he acted immediately upon such discovery.
 

 The language of the court especially in the use of the word “actually” in referring to the defendant’s discovery of the plaintiff’s dangerous situation prompted further controversy which arose in the subsequent case of Jackson v. Cook, supra. Whereas in the Rottman case it was held that the perilous position of the plaintiff was actually discovered by the defendant who, after such discovery, had time to avoid the accident and was held liable, in the Jackson case there was no
 
 actual discovery
 
 of the plaintiff’s danger and the question presented was. whether, under the circumstances and the facts of that case the driver could, or should have seen the danger by keeping a sharp lookout ahead, and for failure to exercise this duty which the law imposes on him, he became responsible in damages. In resolving the question before it the court after quoting what it had stated in the Rottman case to the effect that the first duty of those who operate engines or motor'vehicles was to keep a sharp lookout ahead to discover the presence of those who might be in danger, stated: “This makes it clear enough, we think, that we did not intend to, and did not, set aside the well-recognized and settled rule that the duty of those in charge of motor cars and engines to look ahead and observe never ceases; that what they can see they must see and in legal contemplation they do see; that their failure to see what they could have seen by the exercise of due. diligence does not absolve them from liability.”
 

 It was on the extension of the rule as announced in Jackson v. Cook that the Court of Appeal held the driver of the truck in this case guilty of a violation of the last clear chance rule. However, the
 
 *606
 
 facts in that case' were materially different from those in the case now before us. In the Jackson case the injured party was a pedestrian who was walking along the right hand side of the highway when the defendant’s automobile, proceeding in the same direction, struck him down. The plaintiff in that case was wobbling and staggering on the road and in such condition physically, that he had been warned before the accident, by.another motorist, to get off the road. His negligence therefore could Ibe said to have been passive, as distinguished from active negligence, or at least, since he did not see the car coming from behind him, he could not be presumed to know of his peril or have an opportunity to get out of the danger he was in. In the instant case the bicycle rider was approaching the truck from the opposite direction and had he been looking could have seen the truck making its left'hand turn in front of him and by either applying his brakes or steering his bicycle toward the left or the rear end of the truck as it was -turning, could have avoided the accident.
 

 The difference between the District Court and the Court of Appeal in testing and determining the ability of the truck driver to have avoided the accident after he started to make his turn, and at a time when he should have seen the young man on the bicycle, is a very narrow one. It involves as we have said various calculations of the rate of speed, of the time it takes to react to an emergency and the application of brakes as well as the distance in which a truck, like the one in this case, can be brought.to a stop, travelling at a given speed. As a result of those calculations, especially those of the rate of speed of the respective vehicles which are based principally on assumptions, the difference is one of seconds in the matter of time, and of a few feet only in the matter of distance; too little in our opinion to justify the application of the doctrine of last clear chance and discovered peril. “The doctrine of the last clear chance is one involving nice distinctions, often of a technical nature, and courts should be wary in extending its application.” Hutcheson v. Misenheimer, 196 Va. 511, 194 S.E. 665, 667.
 

 But there is another point on which we believe the Court of Appeal erred in disagreeing with the trial judge and that is with regard to the duty of the truck driver to have seen the approaching bicycle as he proceeded to make his left hand turn.
 

 Assuming, as both courts found, that the driver of the truck was not negligent in any manner when he had stopped or slowed down and surveyed the situation before proceeding to make the turn, his duty then was to concentrate' his attention on making the turn and, as stated in Rottman v. Beverly, supra, and in Jackson v. Cook, supra, “to keep a sharp lookout
 
 ahead
 
 to discover the presence of those who might be in danger.” (Italics ours.) He was turning from west to south, and, looking ahead in making the turn, that meant
 
 *608
 
 that he had to direct his vision gradually southward and away from the west, the direction from which the bicycle rider was coming. Assuming that even though he might, by a casual glance, have seen the young man at the beginning of his turn, there is nothing to indicate that at that moment, the latter was in peril. In this connection, we are bound to give some consideration to the conduct of the young man who says that he did not see the truck until the very moment he was about to run into it. The rule of “the last clear chance” or “discovered peril” applies to both parties who are involved in an accident. In 38 Am.Jur. Negligence, Sec. 227, that thought is expressed as follows: “As graphically stated by some authorities, the doctrine of discovered peril is a two-edged sword, applicable equally to the rights of a defendant and those of a plaintiff.” Under the facts of this case it was the bicycle rider who had the better opportunity to observe the situation and apprehend the danger before it became imminent. His opportunity came as late, if not later than that of the truck driver, to avoid the accident; he had the last clear chance and is not in a position to invoke its provisions against the defendants.
 

 The case of Lane v. Bourgeois, La.App., 28 So.2d 91, relied on by counsel for plaintiff was not decided on the doctrine of the last clear chance. Whilst it is true that the court stated that the plaintiff might have also recovered damages under that doctrine, that was because after his peril arose the defendant, and not he, had the opportunity to avoid the accident, whereas in this case the plaintiff had an equal, if not greater, opportunity of avoiding it.
 

 For the reasons stated the judgment of the Court of Appeal is reversed and set aside, and it is now ordered that the judgment of the District Court be, and it is affirmed.