**Gloria Mae BROWN et al., Plaintiffs,**

v.

**LOUISVILLE AND NASHVILLE RAILROAD COMPANY, Defendant.**

**Civ. A. No. 3262.**

United States District Court
E. D. Louisiana, New Orleans Division.

Oct. 13, 1955.

Arnold C. Jacobs, New Orleans, La., Montgomery, Barnett, Brown & Sessions, Cicero C. Sessions, New Orleans, La., for plaintiffs.

Chaffe, McCall, Toler & Phillips, Harry McCall, Jr., New Orleans, La., for defendant.

WRIGHT, District Judge.

The defendant operates a commuter train between Ocean Springs, Mississippi, and New Orleans, Louisiana. At Pendleton Crossing, near New Orleans, Louisiana, on November 22, 1950, that train was in collision with a truck being driven by Mitchell A. Brown, who was killed. Brown's widow, on behalf of herself and her minor children, has brought this action for damages charging negligence on the part of the railroad in causing the death of her husband.

The intersection at which the accident occurred is formed by unpaved Pendleton Road leading to the Pendleton Shipyard and three sets of railroad tracks. On Pendleton Road, 25 feet in advance of the first track, was the customary stop sign warning approaching vehicles of the presence of the railroad crossing. From the sign, the driver of a vehicle approaching from the east on Pendleton Road, as Brown was, could see to his right up the railroad track, the direction from which the train was approaching, at least a mile. The same unobstructed view was, of course, available to the operators of the train. The accident in suit occurred at 8:28 A. M. in broad daylight on a clear, dry day.

Prior to approaching the Pendleton Crossing, the train had been proceeding southward in open country at a speed in excess of 60 miles per hour. Approximately one mile before reaching the intersection, the train began to reduce speed in order to cross the Industrial Canal Bridge, some 240 feet south of Pendleton Crossing, at a speed of 15 miles per hour as required by company rules. At the time the engineer began to reduce speed, he set the engine bell to ring automatically, and a quarter of a mile away from the crossing commenced

sounding the regulation crossing whistle. As the train neared the crossing, the view of the engineer to the left, seated as he was on the right-hand side of the cab, was progressively restricted to complete obstruction by the boiler of the locomotive. The fireman, seated on the left-hand side of the cab, was maintaining a lookout ahead and to the left. He saw the truck when the train was between six and seven hundred feet away from the crossing. At that time the truck was on the first track 20 to 25 feet past the stop sign and 20 to 25 feet from the southbound track on which the train was proceeding.

As the truck moved forward slowly, the fireman assumed that it would stop short of the southbound track. When the truck reached the point approximately 15 feet from the southbound track, it began to accelerate sharply and the fireman called a warning of the presence of the truck to the engineer. The engineer, who had not seen, and was not in a position to see, the truck, immediately placed the brake valve lever in emergency position. Almost simultaneously, as the front of the truck became visible to the engineer, the right side of the engine pilot struck the right rear corner of the truck, throwing it upside down in a ditch to the right, causing decedent's death. The train came to a stop 526 feet from the crossing.

There were no living witnesses to the accident except the engineer and the fireman on the train. Since the presence of the truck was not discovered by the fireman until it was on the switch track, there is no way of knowing whether Brown stopped his truck at the stop sign before entering the intersection, or merely proceeded into the intersection without stopping, intending, if necessary, to stop before reaching the track on which the train was proceeding. The plaintiff, realizing that under the law the truck was required to stop for the train and not the train for the truck, makes no serious contention that Brown was free from negligence. She relies primarily on the doctrine of last clear chance, alleging that if the train had applied its brakes seconds sooner, the truck would have completed the crossing safely. The railroad contends that Brown's death resulted from his own negligence and that the railroad was free from negligence.

The question as to the negligence of the truck driver need hardly be labored. Under the law he was bound to stop for the train. Instead of stopping, he brought his truck into collision with the train, whose presence was obvious not only to his sense of sight but to his auditory sense as well. As plaintiff impliedly admits, the only serious question in this case is one involving the proper application of the doctrine of last clear chance.

It must be owned that the railroad's position of freedom from negligence on its part is subject to some doubt. No explanation is offered as to why the fireman did not see the truck until it was less than 25 feet from the southbound track. Admittedly his view was completely unobstructed. Even after he saw the truck on the first track, proceeding across the intersection, still he failed to give warning of its presence to the engineer, in spite of the fact that the truck was long past the position of safety by the stop sign at which the law required it to stop. Unquestionably, if the fireman had warned the engineer when he first saw the truck in a position of danger crossing the intersection, the accident would have been avoided. Moreover, if the fireman had seen the truck sooner, as he should have, and watched it as it proceeded past the stop sign and onto the railroad right of way, he may not have indulged in the mistaken assumption that it would stop before reaching the southbound track.

The negligence of both parties to the accident having been established, consideration must now be given to the application of the doctrine of last clear chance. The acceptance of this doctrine results from reluctance on the part of courts to apply the harsh common law

rule of contributory negligence as a bar to recovery, particularly in those instances where the defendant has superior knowledge of the danger, or where the negligence of the defendant is later in point of time and, therefore more proximate to the accident, than the negligence of the plaintiff. The doctrine would appear to be a transitional one, a way station on the road to apportionment of damages. Unfortunately, however, the application of the doctrine has tended to mute the demands for complete rejection of the contributory negligence rule and to freeze the jurisprudence in the transition.

As applied by the courts of Louisiana, the doctrine of last clear chance is composed of the following elements: (a) plaintiff in a position of peril of which he was unaware or unable to extricate himself; (b) defendant in a position where he actually discovered, or should have discovered, the plaintiff's peril; (c) at such time that the defendant could have, by the exercise of reasonable care, avoided the accident.[1] All three elements must be present before the rule may be applied. In other words, the doctrine requires that a negligent defendant be held liable to a negligent plaintiff if the defendant, aware of the plaintiff's peril or unaware of it through carelessness, had in fact a later opportunity than plaintiff to avert the accident.

In the case at bar, the defendant actually saw the truck in a position of peril. In fact, the evidence shows that earlier discovery of that peril was precluded by the defendant's negligence. The evidence further shows that the defendant, even after it discovered the peril, had an opportunity to avoid the accident by stopping the train and did not avail itself of the opportunity. The evidence does not show, however, that the plaintiff's decedent was unaware of his own peril or was unable to extricate himself therefrom. The evidence shows that while the defendant was in fact negligent, it was the truck driver who had the last opportunity, the last clear chance, to avoid this accident. The truck, proceeding slowly as it was, could have been stopped in a matter of a very few feet, whereas the train, proceeding at approximately 30 miles per hour, required 526 feet in which to stop. And the greater the speed, the greater the distance required to stop. So plaintiff's argument as to excessive speed on the part of the train is self-defeating.

This accident was caused by the joint and concurring negligence of the train crew and the truck driver. If either party to the accident had the last clear chance to avoid it, it was the truck driver. See Bergeron v. Department of Highways, supra.

Judgment for defendant.

---

1. See Bergeron v. Department of Highways, 221 La. 595, 60 So.2d 4; Jackson v. Cook, 189 La. 860, 181 So. 195; Rottman v. Beverly, 183 La. 947, 165 So. 153.