96 So.2d 340 (1957)
MARYLAND CASUALTY COMPANY, Plaintiff-Appellant,
v.
ALLSTATE INSURANCE COMPANY et al., Defendants-Appellees.
No. 8521.
Court of Appeal of Louisiana, Second Circuit.
May 27, 1957.
Rehearing Denied June 28, 1957.
Writ of Certiorari Denied October 8, 1957.
*341 Gist, Murchison & Gist, DeWitt T. Methvin, Jr., Alexandria, for appellant.
Stafford & Pitts, Alexandria, for appellees.
GLADNEY, Judge.
This action is one sounding in tort and arises from a fatal accident which cost the life of Ellis Hickman, an employee of the Department of Highways of the State of Louisiana. Suit was instituted by Maryland Casualty Company which became legally subrogated under LSA-R.S. 23:1101, 23:1161, for workmen's compensation payments to the widow and heirs of the employee. Made defendants are Murray Hicks, the driver of the automobile which caused the death of Hickman, and his liability insurance carrier, Allstate Insurance Company. Following a trial on the merits, the district court rejected plaintiff's demands and it has appealed, seeking a review of the issues which developed from charges of negligence and counter negligence imputed to Hicks and the deceased.
The accident took place on State Highway No. 21, four miles west of Hineston in Rapides Parish, Louisiana, at about 7:00 o'clock on the morning of September 13, 1954, at which time the atmosphere was clear and dry. The highway at that point was level and straight for a distance of one-half mile or more on either side and was paved with an eighteen-foot asphalt slab. Work had been in progress on the shoulders of the road and a number of gravel trucks of the Department of Highways were engaged in hauling and unloading gravel and dirt. On this particular day work had not yet commenced except to the extent that several of the highway trucks were engaged in placing warning signs and preparing to commence hauling. One of these trucks, driven by Earl B. Deville, had preceded the others and gone westerly about one-half mile where Deville erected a sign reading: "Slow, Road Repairs Ahead." A truck driven by the deceased arrived at the point of the accident and stopped on the north shoulder of the road. A third truck operated by Otis Guree temporarily stopped behind Hickman's truck, then pulled to the left and proceeded westerly. Still another truck, being driven by Thomas L. Miller, was more than three hundred feet to the east of and approaching the locus of the impending accident. With these motor vehicles approximately in the position so designated, Ellis Hickman opened the door of his truck, stepped out and proceeded to cross to the opposite or south side of the highway for the purpose of placing a sign similar to the one referred to above. After he had taken about four steps and crossed the center of the asphalt strip, he was struck by a Pontiac automobile driven by Murray Hicks and was instantly killed.
Otis Guree and Thomas L. Miller, drivers of the trucks as above described, testified that they witnessed the collision. Guree said he had passed the automobile driven by Hicks and was about two or three hundred feet west of it when, through his rear view mirror, he observed it strike Hickman. He expressed the opinion that the automobile driven by Hicks was traveling at a speed of eighty to eighty-five miles per hour. Miller, likewise testified he observed the impact, at which time he was about three hundred feet to the east thereof. He testified he saw the deceased when he stepped from his truck and started on a trot across the pavement. Asked what Hickman did when he got out of his truck, Miller answered: "Well, he just started in a trot across the road." Other eyewitnesses were Henry Harvey Judkins, Willie Bailey, Jr., and Murray Hicks. Judkins and Bailey were seated on the front seat with the driver of the automobile. Bailey stated, however, he did not see Hickman until after Hicks had effectively *342 applied his brakes. Judkins testified he saw the deceased step from the running board and run across the highway. None of the passengers seated on the rear seat of the automobile was paying attention ahead and their testimony related only to the speed at which Hicks was driving and their observation concerning the sign placed on the highway by Deville. All of the passengers in Hicks' car who testified, stated the driver of the automobile was not driving more than fifty-five miles per hour. None of them observed the sign placed by Deville, nor could any of these witnesses estimate the distance from Hickman when they first observed him in the highway.
Murray Hicks testified he was traveling from fifty to fifty-five miles per hour when he drove over a hill about one-half mile west of the scene of the accident, and at that time observed two trucks parked on the north side of the highway, whereupon he immediately released his accelerator pedal and slowed to a speed of forty to forty-five miles per hour. He said he saw Hickman when he opened the door of his truck but did not again see him until he was in the middle of the highway just over the center line in the south, or Hicks' proper lane of travel; that he immediately applied his brakes and exerted every effort to control his car. At the time he first observed Hickman out of the truck, he was running across the road. Hicks testified further that he did not blow his horn, giving as his reason for not doing so he did not have time. He also stated he did not observe any road sign.
Two State troopers, Clifford G. Wilson and James E. Ray, who arrived promptly upon the scene, found the Hicks automobile had skidded a measured distance of ninety-seven feet to the point of its impact with the deceased, and then skidded a further distance of one hundred ten feet down the highway where it came to rest crossways on the pavement.
Based upon this evidence, which is not refuted, the trial judge concluded the Hicks vehicle was traveling in excess of sixty miles per hour at the time the driver actually applied his brakes. It is clearly demonstrated, we think, that Hicks was traveling at an excessive rate of speed and, therefore, was guilty of negligence.
The defendants, pleading alternatively, strongly contend the deceased was contributorily negligent in failing to observe if the highway could be safely crossed. Plaintiff, anticipating this issue, invokes the last clear chance doctrine. Therefore, as the primary negligence of Hicks is plainly indicated two principal issues are presented for solution, and these are, first, as to the contributory negligence of the deceased, and second, but only if this question is answered in the affirmative, whether the last clear chance doctrine is applicable under the facts herein involved.
There is no conflict in the testimony as to the manner in which the deceased left his place of safety in the truck and proceeded hurriedly to cross from the truck to the opposite shoulder of the road. It is clearly shown Hickman got out of the left door of his truck and without looking in either direction for oncoming traffic, attempted to cross at a fast walk, or, as described by Miller "at a trot" toward the sign which he was intending to place in an upright manner. The point of impact occurred within a few feet of the center and in the south lane of the highway.
The physical facts as so established herein, show the Hicks car because of its speed at the time the deceased stepped from his truck, could not have been, and actually it was not, brought to a stop within two hundred feet. Further, the record reflects Hickman took only about four steps before he was struck, after which the automobile skidded one hundred ten feet. Thus, it seems certain Hickman was in peril from the moment he stepped upon the asphalt strip, and this being true, surely he would *343 not have attempted to place himself in the path of the oncoming vehicle had he made proper observation. His failure in this respect constituted the plainest sort of negligence. Fuqua v. Martin, La.App.1949, 40 So.2d 404; Flowers v. Morris, La.App. 1950, 43 So.2d 917; Wall v. Great American Indemnity Company, La. App. 1950, 46 So.2d 655; Martin v. American Heating & Plumbing Company, La.App. 1951, 52 So. 93; Bagala v. Kimble, La.App. 1952, 62 So.2d 523, rehearing denied 1953.
Counsel for appellant contends, however, that since Hickman was engaged in the performance of duties requiring him to work on the highway, he was not required to exercise as high a degree of precaution as is required of an ordinary pedestrian, and that under the circumstances in this case his actions were reasonable. Application of this doctrine was urged in Ellis v. Whitmeyer, La.App.1938, 183 So. 77, and recognized as valid by this court, but there it was found under the particular circumstances of the case, it was unnecessary to resort to the rule. The decision rested solely on the negligence of the defendant, plaintiff being free from fault. Where the facts disclose a worker is busy in the street or highway, under circumstances which show that he is not watchful and is relying on the protection of signs, barricades, or flagmen, the motorist will be held to a higher and the worker to a lesser degree of care.
But it is obvious that when the worker is not engaged in some activity which diverts his attention from vehicular traffic, but is merely in the act of crossing or walking along the street or highway, he should be expected to exercise the same care for his own safety as that required of an ordinary pedestrian. In Andrus v. S. J. Boudreaux & Son, La.App.1935, 158 So. 679 and in Bailey v. Reggie, La. App.1945, 22 So.2d 698, the foreman of a road crew was held to be guilty of contributory negligence as a matter of law. In Bailey v. Reggie the court said that in cases of this kind it is impossible to relieve a person of normal intelligence and possessing the normal senses of sight and hearing, of any negligence when he suddenly steps on the highway without taking the usual and simple precaution of looking to see if there is any traffic coming. In Ellis v. Whitmeyer, supra, at the point of the accident, the Highway Commission had closed the south half of the highway to traffic by parking a large compressor truck on that side of the road and was rerouting traffic in both directions over the north side of the route. Passage was further restricted by danger signals on each side of the highway, virtually creating what might be termed a safety zone for several hundred feet on each side of the bridge. At the time Ellis was knocked down by the automobile he had not entered the north half of the highway where Whitmeyer should have operated his car at a cautious rate of speed. Thus, under these stated facts it very well might have been said Ellis was relieved of a duty to be as carefully observant as would be required of an ordinary pedestrian, and, for this reason extra means had been taken to protect the workmen from danger and to impress upon travelers the presence of men continuously in danger. The finding of the court was that Ellis was not contributorily negligent, but the negligence of Whitmeyer was the sole proximate cause of the accident.
The facts evidenced herein are entirely different from those presented in Ellis v. Whitmeyer. In the instant case no safety zone was created, there was no person directing traffic and actual work had not begun on the shoulders of the highway by employees of the Department of Highways. Hickman was, in fact, the driver of a truck and although it was his duty to put the sign in place, which he was about to do at the time of his death, this was the only act which required him to get out of his truck. There was nothing to relieve him of his obligation to be observant of any approaching traffic. It is unquestionable therefore, that the deceased's act of *344 attempting to cross the highway at the time he did, was an act of negligence on his part and the judge a quo correctly held that Hickman was guilty of contributory negligence.
The remaining issue is whether the doctrine of last clear chance has application under the facts disclosed. This doctrine constitutes an exception to the rule that contributory negligence bars recovery for damages and simply stated, holds that when during the course of events leading up to an accident one of the parties guilty of primary negligence has an opportunity to avoid the accident at a time when the other party, likewise negligent, has no such opportunity, as between the two the latter will be relieved of responsibility for his negligence. In Jackson v. Cook, 1938, 189 La. 860, 181 So. 195, 197, the doctrine of discovered peril as previously stated in Rottman v. Beverly, 1936, 183 La. 947, 165 So. 153, was extended or broadened in a case where the driver of the car did not see but could have seen plaintiff in his peril if he had been looking ahead and, therefore, the defendant was not absolved of liability even though he did not discover the peril of the plaintiff. Because of this ruling the doctrine as applied in this state more properly should be termed the doctrine of apparent peril for its result is to hold the motorist liable because he has failed to avoid striking the plaintiff whose peril would have been apparent if he had looked.
The conditions which give rise to application of the last clear chance doctrine were aptly stated in Brown v. Louisville & N. R. R. Company, D.C., 135 F.Supp. 28, 31, thusly:
"As applied by the courts of Louisiana, the doctrine of last clear chance is composed of the following elements: (a) plaintiff in a position of peril of which he was unaware or unable to extricate himself; (b) defendant in a position where he actually discovered, or should have discovered, the plaintiff's peril; (c) at such time that the defendant could have by the exercise of reasonable care, avoided the accident. All three elements must be present before the rule may be applied. In other words, the doctrine requires that a negligent defendant be held liable to a negligent plaintiff if the defendant, aware of the plaintiff's peril or unaware of it through carelessness, had in fact a later opportunity than plaintiff to avert the accident."
In Bergeron v. Department of Highways, 1952, 221 La. 595, 60 So.2d 4, Justice LeBlanc noted that testing the ability of a motorist to avoid an accident involves calculation of: the rate of speed, the time it takes to react to an emergency, and apply the brakes; as well as a determination of the distance in which the vehicle can be brought to a stop, traveling at the given speed. The resulting conclusions which may be arrived at are based principally on assumptions, the difference being one of seconds in the matter of time, and of a few feet only in the matter of distance. He then quoted with approval from Hutcheson v. Misenheimer, 169 Va. 511, 194 S.E. 665, 667:
"The doctrine of the last clear chance is one involving nice distinctions, often of a technical nature, and courts should be wary in extending its application."
The soundness of the foregoing statement is impressive and we hesitate in cases where the last clear chance doctrine is relied upon to relieve a party of his negligent acts except when opportunity presented to the other party to avert the accident is manifest. Therefore, it has been a rule which has often been followed in our courts that when a pedestrian moves precipitantly from a point of relative safety into the path of a motor vehicle at a moment when it is too late from both point of time and distance to do anything to circumvent an impending accident, the pedestrian may not avail himself of the clear *345 chance doctrine. Bailey v. Reggie, La.App. 1945, 22 So.2d 698; Conway v. Serio, La. App.1950, 47 So.2d 126; Kimble v. Airco Refrigeration Service, Inc., La.App.1952, 57 So.2d 788; Hall v. Alfortish, La.App. 1952, 60 So.2d 723; Dupuy v. Veazey, La. App. 1953, 63 So.2d 756; Moore v. Moran, La.App.1954, 74 So.2d 767.
Counsel for appellant has invited our attention to a number of cases in which plaintiff was permitted to recover through application of the doctrine of last clear chance. We have examined these cases but do not find them applicable herein because of the circumstances upon which the court concluded that the driver against whom it was charged had an opportunity to avert the accident, for he actually did have sufficient time and distance within which to act.
As pointed out above, there is little, if any, question of the negligence of the plaintiff, Hicks, due to his excessive speed. It is equally clear the deceased was guilty of negligence contributing to the accident because of his failure to properly observe the approaching automobile, and in crossing its path at an unsafe time. The question now arises as to whether or not Hicks could have avoided striking the deceased after he saw or should have seen the latter in a position of peril. We think Hicks did not have an opportunity to avert the accident from the moment Hickman stepped out of his cab, regardless of whether the peril was known and understood had he looked at that instant. The testimony does not inform us how far away the automobile was when Hickman stepped out upon the pavement. Possibly because of the excessive speed of the automobile none of the witnesses in the automobile was able to give any idea as to this distance. However, it is known that Hickman could have taken no more than four steps from the door of his truck to the point of impact and during this brief interval the automobile skidded a distance of ninety-seven feet, and reaction time of ¾ of a second added an additional sixty-six feet or more before the brakes took effect. The vehicle was moving more than eighty-eight feet per second. So, affected by these circumstances, we think the answer must be that after the apparent or discovered peril, no opportunity was presented to the driver to avert the accident. Therefore, the doctrine of the last clear chance can have no application in the instant case.
For the foregoing reasons, the judgment from which appealed is affirmed at appellant's cost.