134 So.2d 330 (1961)
Jean Pierre FONTENOT, Plaintiff and Appellee,
v.
TRAVELERS INDEMNITY COMPANY, Defendant and Appellant.
No. 389.
Court of Appeal of Louisiana, Third Circuit.
November 6, 1961.
Rehearing Denied November 29, 1961.
Certiorari Denied January 15, 1962.
*331 Dubuisson & Dubuisson, by W. A. Brinkhaus, Opelousas, for defendant-appellant.
Tate & Tate, by Donald Tate, Mamou, for plaintiff-appellee.
Before FRUGÉ, CULPEPPER and HOOD, JJ.
HOOD, Judge.
This is an action for damages instituted by Jean Pierre Fontenot arising out of the death of plaintiff's wife, Mrs. Olina Berzas Fontenot, who was killed when struck by an automobile being driven by Everton Vidrine. The sole defendant named in the suit is Travelers Indemnity Company of Hartford, Connecticut, which was the public liability insurer of Everton Vidrine. After trial of the case on its merits, the trial court rendered judgment in favor of plaintiff, and defendant has appealed from that judgment.
The accident which gave rise to this suit occurred about 6:30 P.M. on September 25, 1959, at a point on Louisiana Highway 13 about three miles north of the City of Eunice, in Evangeline Parish. Immediately prior to the accident plaintiff was driving his pickup truck in a southerly direction on the highway, carrying as passengers in the truck his wife and a young girl named Priscilla Fontenot. He stopped his truck on the right, or west, side of the highway in order to permit his wife to get out of the truck and go to the home of plaintiff's father which was located on the east side of the road. Plaintiff brought his truck to a complete stop, with the right wheels of the truck being about one foot off the west edge of the hardsurfaced portion of the highway. Immediately after the vehicle was brought to a stop, plaintiff's wife alighted from the truck, on the right or west side, and she proceeded to walk toward the north around the rear end of the truck and then diagonally in a northeasterly direction across the highway. While Mrs. Fontenot was crossing the highway in that manner, she was struck by the Vidrine car, which at that time was being driven in a northerly direction on the same highway. Mrs. Fontenot apparently was killed instantly as a result of the accident.
The highway at that point was blacktopped, about 20 feet in width, with smooth and relatively wide shoulders on both sides. The accident occurred at the north end of a long, gradual curve in the highway, the Vidrine car having just negotiated this curve when it reached the point where the Fontenot truck was parked. The weather was clear and the highway was dry. The accident occurred about "dusk," and the headlights of both the Fontenot truck and the Vidrine automobile were burning. Plaintiff's truck at that time was carrying a load consisting of one bale and three or four sacks of cotton.
*332 The Vidrine car was being driven at a speed of between 45 and 55 miles per hour as it approached the point where the accident occurred, the speed limit on the highway there being 60 miles per hour. Vidrine, therefore, was driving less than the maximum speed limit, and in our opinion he was driving at a reasonable and prudent speed as he approached the Fontenot truck.
The evidence establishes that Mrs. Fontenot was in the northbound lane of traffic, about one or two feet from the eastern edge of the hardsurfaced portion of the highway, when the collision occurred, and that she was struck by the right front portion of the insured car. The Vidrine car came to rest about 140 feet north of the point of impact, the evidence indicating that the brakes had been applied during that interval causing the wheels of the car to skid a distance of 78 feet on the highway before the vehicle was brought to a stop. Everton Vidrine and his wife, who was a passenger in the car with him at that time, testified that although they both were watching the road carefully, they did not see Mrs. Fontenot until the moment before the accident occurred.
The trial judge concluded that the decedent was negligent in attempting to cross the highway from behind a parked vehicle without first determining whether it was safe for her to do so. He further concluded that the driver of the Vidrine car also was negligent in failing to slow down as he approached the parked Fontenot truck, that Vidrine should have observed the decedent in her position of peril in time to have avoided running into her, and accordingly that Vidrine had the last clear chance to avoid the accident. Defendant, as Vidrine's insurer, therefore, was held to be liable in damages to plaintiff under the last clear chance doctrine.
We think the trial court was correct in holding that the decedent was negligent in attempting to cross the highway at that point without first determining whether it was safe for her to do so. Her negligence in that respect clearly was a proximate and contributing cause of the accident. In order for plaintiff to recover in this case, therefore, it is necessary that he establish sufficient facts to warrant the application of the doctrine of last clear chance.
For the successful invocation of the doctrine of last clear chance in a case of this kind, it is necessary that the following facts or circumstances be established: (1) that the pedestrian was in a position of peril of which he was unaware or from which he was unable to extricate himself; (2) that the driver of the motor vehicle actually discovered or was in a position where he should have discovered the pedestrian's peril; and (3) that, at the time, the driver of the motor vehicle, with the exercise of reasonable care, could have avoided the accident. Rottman v. Beverly, 183 La. 947, 165 So. 153; Jackson v. Cook, 189 La. 860, 181 So. 195; Newton v. Pacillo, La. App. 2 Cir., 111 So.2d 895 (Certiorari denied); O'Dell v. Hood, La.App. 2 Cir., 126 So.2d 373 (Certiorari denied).
In this case, Mrs. Fontenot, the pedestrian, was in a position of peril of which she was unaware, so the case must be decided on the remaining issue of whether Vidrine, by the exercise of reasonable care, could have avoided the accident after he should have discovered the decedent's perilous position.
A plat prepared by a civil engineer and a number of photographs of the scene of the accident were introduced in evidence. From these exhibits and the testimony, it appears to us that Mrs. Fontenot was approximately 25 feet behind, or north of, her husband's truck at the time the Vidrine automobile struck her. The truck, we assume, was six or seven feet wide, and since plaintiff states that it was parked with the right wheels about one foot off the hardsurfaced portion of the highway, the left side of the truck must have extended at least five feet onto the southbound lane of traffic. Vidrine testified that when he first saw the decedent "she was running towards, across the right *333 side of the car," while plaintiff and other witnesses testified that she walked diagonally across the highway from the rear part of plaintiff's truck to the point where the accident occurred. The evidence is uncertain, therefore, as to how fast the decedent was walking or as to the angle at which she actually crossed the highway. Assuming, however, that she walked diagonally across the road from the right rear part of plaintiff's truck to the point where the accident occurred, it is obvious that while walking a part of that distance she was behind her husband's truck, and during that time she could not have been seen by Vidrine even if visibility had been perfect. It also seems to us that if Vidrine had seen the defendant as soon as she emerged from behind the truck he would have had the right to assume that she would stop before she entered his lane of traffic, unless other facts and circumstances existed which should have given him reason to suspect that she did not see him or that she did not intend to stop. In this case, the evidence does not show any fact or circumstance which we think should have caused Vidrine to anticipate that the decedent would walk in front of his approaching vehicle, assuming that Vidrine saw her as soon as he should, until about the time she reached and then crossed the center line of the highway. Since there is no proof of any such facts, it seems to us that Vidrine, had he seen her sooner, would have had no reason to anticipate that Mrs. Fontenot was going to attempt to cross his lane of traffic directly in front of his car and thus place herself in a position of peril. Thompson v. Dyer, La.App. 1 Cir., 1 So.2d 433; Jones v. American Mutual Liability Ins. Co., La.App.Orl., 189 So. 169 (Certiorari denied); Newton v. Pacillo, La.App. 2 Cir., 111 So.2d 895 (Certiorari denied).
As near as we can determine from the evidence, considering the direction in which she was walking and the distance covered, Mrs. Fontenot must have been about 13 or 14 feet from the point of impact at the time she crossed the center line of the highway. She apparently had time to take no more than five or six steps, therefore, between the time it should have become apparent to Vidrine that she was going to enter his lane of traffic and the time the collision occurred.
Plaintiff contends that the evidence shows that the Vidrine car was being driven at a speed of at least 55 miles per hour as it approached the Fontenot truck. An automobile traveling at that speed moves 81 feet per second, and according to all of the charts of stopping distances which we have examined it appears that the minimum distance required for stopping at that speed is at least 190 or 200 feet, including the reaction time. Blashfield, Cyclopedia of Automobile Law and Procedure, Vol. 9C, Sec. 6237, page 413 (166 feet at 50 mph; 226 feet at 60 mph); Drivers Guide, Department of Public Safety, State of Louisiana (181 feet at 50 mph; 251 feet at 60 mph); Lawyers Motor Vehicle Speed Chart, International Enterprises, Boston, Mass. (299.9 feet at 55 mph); XIV Tulane Law Review, p. 503 (193.7 feet at 50 mph; 265.8 feet at 60 mph, under average conditions); Traffic Institute, Northwestern University, May, 1957, p. 15 (291 feet at 55 mph); Snyder's Accident Analysis Calculator, Safety Service Company, Oklahoma City, Okla. (237 feet at 55 mph). Although the accuracy of none of these charts has been established in this case, counsel for plaintiff in his brief cites and relies on the Blashfield chart, which incidentally is the one showing stopping distances most favorable to plaintiff, and we think it is fair to assume that the minimum stopping distances shown in that chart would be applicable here. If Vidrine had been driving at the speed contended by plaintiff, therefore, he could not have avoided the accident unless he had observed the danger at least 190 or 200 feet before he reached the point where the collision occurred. Also, it would require between two and three seconds for Vidrine to travel that distance, even if he maintained his full speed during that entire time. These charts show, however, *334 and it is logical to conclude, that if Vidrine had applied his brakes and brought his car to a stop as soon as possible it would have required longer to traverse the minimum stopping distance than it would had he maintained his original speed.
There is nothing in the record to indicate how far Vidrine was from Mrs. Fontenot when she first entered his lane of traffic, and we have no way of determining the number of seconds which were required for the decedent to walk from the center line of the highway to the point of impact. As we have already observed, however, she could have taken no more than five or six steps in traveling that distance, and it seems to us that it certainly would take her no longer to walk that short distance than it would for the Vidrine car to travel a distance of at least 190 or 200 feet at the speed it was traveling. If there is a difference in the lengths of time each would require, we think that difference would be so minute that it would not warrant a holding that one party or the other had the last clear chance to avoid the accident. Bergeron v. Department of Highways, 221 La. 595, 60 So.2d 4.
In a case where a plaintiff relies on the doctrine of last clear chance as a basis for recovery, the burden of proof rests upon him to establish that the defendant had the last clear chance to avoid the accident. Boissac v. Kleinpeter, La.App. 1 Cir., 191 So. 157; Ballard v. Piehler, La. App. 1 Cir., 98 So.2d 273. In this case the burden of proof rests upon plaintiff to establish by a preponderance of the evidence that Vidrine, by the exercise of reasonable care, could have brought his automobile to a stop after he should have observed Mrs. Fontenot in her position of peril and before he reached the point where the accident occurred.
The Supreme Court in Bergeron v. Department of Highways, supra, quoted with approval the following language from Hutcheson v. Misenheimer, 169 Va. 511, 194 S.E. 665, 667:
"The doctrine of the last clear chance is one involving nice distinctions, often of a technical nature, and courts should be wary in extending its application." [221 La. 595, 60 So.2d 8.]
In Maryland Casualty Company v. Allstate Insurance Company, La.App. 2 Cir., 96 So.2d 340, 344, which involved facts similar to those presented here, the Court, after quoting the above language from the Bergeron and Hutcheson cases, said:
"The soundness of the foregoing statement is impressive and we hesitate in cases where the last clear chance doctrine is relied upon to relieve a party of his negligent acts except when opportunity presented to the other party to avert the accident is manifest. Therefore, it has been a rule which has often been followed in our courts that when a pedestrian moves precipitantly from a point of relative safety into the path of a motor vehicle at a moment when it is too late from both point of time and distance to do anything to circumvent an impending accident, the pedestrian may not avail himself of the clear chance doctrine." (Emphasis added.)
In this case we conclude that plaintiff has failed to establish that Vidrine, by the exercise of reasonable care, could have avoided the accident after he should have seen Mrs. Fontenot enter his lane of traffic. Accordingly, we think the trial court erred in holding that plaintiff is entitled to recover under the last clear chance doctrine.
For the reasons herein assigned, therefore, the judgment of the district court is reversed, and judgment is hereby rendered in favor of defendant, rejecting plaintiff's demands at his costs. All costs of this appeal are assessed to plaintiff-appellee.
Reversed.
FRUGÉ, J., dissents with reasons.
*335 FRUGÉ, Judge (dissents and assigns written reasons).
I respectfully dissent because I find no manifest error in the trial court's opinion. The trial court held that the pedestrian, the late Mrs. Fontenot, was contributorily negligent in having failed to observe the oncoming car and was negligent in crossing the road when she did; but, it also held in awarding judgment to the plaintiff, that the defendant's driver (assured) had the last clear chance to avoid the accident. The evidence indicates that the victim was walking diagonally northeast across the road and was struck near the edge of the blacktop.
I believe that the rule set forth by our Supreme Court in Jackson v. Cook, 189 La. 860, 181 So. 195, 197, is controlling here and which I quote as follows:
"`The first duty of those who operate engines or motor vehicles is to keep a sharp outlook ahead to discover the presence of those who might be in danger.'
"This makes it clear enough, we think, that we did not intend to, and did not, set aside the well-recognized and settled rule that the duty of those in charge of motor cars and engines to look ahead and observe never ceases; that what they can see they must see and in legal contemplation they do see; that their failure to see what they could have seen by the exercise of due diligence does not absolve them from liability.
"Up to the time the Court of Appeal decided the Rottman Case, 162 So. 73, the jurisprudence relating to the last clear chance doctrine was confusing. This court in several cases had said in general terms that, where the negligence of a plaintiff continued up to the moment of the accident, there could be no recovery. Such statements had been made without qualification, and what we held in the Rottman Case was that such statements were too broad, and we qualified the rule by holding that, when a defendant sees another in peril of which the other is not aware, then a second or subsequent duty arises and devolves upon the defendant, which duty is to use every possible available means to avert injury. We said (page 156):
"`If the defendant fails to perform that duty, his negligence in that respect is regarded as the proximate and immediate cause of the injury and the negligence of the plaintiff in putting himself in a place of danger, the remote cause. In such cases the last clear chance doctrine applies even though plaintiff's negligence continues up to the accident.'
"The only difference between the Rottman Case and the case presently before us is this: In the Rottman Case Mrs. Rottman was guilty of gross negligence which continued up to the moment of the accident. Beverly, the driver of the automobile, actually saw her in her perilous position in time to avert the accident had he used proper precautions. In the present case the plaintiff was guilty of gross negligence which continued up to the moment of the accident. The driver of the car did not see, but could have seen, plaintiff in his peril if he had been looking ahead. The mere fact that the driver of the car in this case did not see plaintiff does not absolve the defendant from liability, because it was the duty of the driver to look, and, according to the findings of both courts, he was not looking. The Rottman Case is not authority for holding that, merely because the driver of the car in this case did not actually see the plaintiff, the defendant is not liable."
It is my considered opinion that there was no manifest error on the part of the trial judge's finding of fact that under the *336 holding of the Cook case, supra, the District Court should have been affirmed.
For these reasons, I respectfully dissent.

On Application for Rehearing.
En Banc. Rehearing denied.
FRUGÉ, J., dissents from refusal to grant rehearing for reasons in original dissenting opinion.