HERGET, Judge.
Emmco Insurance Company and its assured, Hughey H. King, instituted this action against Employers Mutual Liability Insurance Company of Wisconsin, the public liability insurer of a Chevrolet automobile operated by Walter Lee Smith, seeking recovery of property damages sustained as a result of a collision between the cars of Defendant’s insured, Smith, and Mr. King’s, being driven by his wife Mrs. Hughey H. King.
On May 31, 1961 Mrs. King had parked her vehicle at an angle in the parking lot of the Broadmoor High School. There were vehicles parked on both sides of hers. Upon attempting to exit, in order to observe approaching cars, Mrs. King backed her dar some seven feet out into a one-way traffic lane within the lot provided for vehicles entering the parking area. She, in fact, saw the vehicle operated by Smith approaching but remained stationary. An accident ensued when the right headlight of the Smith car came in contact with the right rear fender of the King car resulting in the damages for which recovery is sought by Plaintiffs. It was stipulated by counsel if Plaintiffs were entitled to recover, the amounts prayed for in the suit were correct. Following a trial of the case, the Trial Court concluded both drivers were negligent but was of the opinion the doctrine of last clear chance was applicable in favor of Mrs. King. In consequence of which, judgment was rendered in favor of Plaintiffs as prayed for, from which judgment Defendant appealed.
The evidence reveals the parking lot was divided so as to permit parking in slots at 45-degree angles on both sides of one-way traffic lanes provided for movement of cars between the two parking lines. Though the lane provided for entrance into the parking lot was one-way, there was a distance between the rears of the cars thus parked of some fourteen to fifteen feet. On entering the parking lot, Mrs. King had driven her vehicle south on one of the lanes and had parked in one of the marked areas with her vehicle facing in a southwesterly direction. When attempting to leave the area she backed her car in a northeasterly direction six or seven feet into the lane provided for traffic and stopped to make observation of any traffic approaching from her right. Mrs. King described her actions in these words:
“Q And did you observe the Smith vehicle coming towards you ?
“A I certainly did.
“Q And did you at any time have reason to believe that an accident was going to occur?
“A Yes, I realized that he was not looking. He had never seen me. *340 He had never looked down toward me and then when he got within a certain distance I remarked that I thought he was going to hit me, to my friend who was in the front seat with me.
“Q Did you do anything else to avoid the—
“A Then I put — I immediately put my hand on the horn and it never went off until he had hit me.
******
“A When I saw this boy approaching he was coming around the curve and I stopped and I never did go forward and I never did go backward. I just remained in that position.
“Q You didn’t stop until you saw him ?
“A I did not stop until I saw him. That’s when I was backing out to see if someone was coming.
“Q But you did not intend to stop unless you saw somebody coming, is that right?
“A No.
* * * * * *
“A No, when I saw him I immediately stopped.
“Q All right then. You were at a stop then when he was sixty feet away?
“A Yes, sir.
******
“Q Now, at that time you say you also saw young Smith looking to his right?
“A To his right.
“Q And you, therefore, blew the horn ?
“A No, sir, I remarked to Mrs. Miller first when he got within I would say, I am not a good judge of distance, but I would say the boy was about thirty feet from me. I remarked to her without even taking my eyes off of him, she didn’t even know that the car was approaching and I remarked to Mrs. Miller, I said, T do believe he is going to hit us.’
“Q Well, was there anything unusual about his speed at the time you—
“A No, he was not speeding, I would think.
******
“Q Now, and all of this time that he had been traveling toward you he had never looked ahead of him?
“A Never.
“Q Never looked ahead of him?
“A No, he had never.”
Smith testified he was driving not more than ten miles an hour and he first observed the King vehicle when he was only two or three feet from it. The King vehicle was at that time moving backward. He sounded the horn on his vehicle but was unable to stop. At the point of collision the King car had extended into his lane some seven feet and there was insufficient room for him to have driven to the left of the King vehicle and avoid striking it or the vehicles parked to his left.
The Trial Court concluded, and we are in accord with its findings of fact, that Mrs. King, not having first observed it was safe to do so without impeding oncoming traffic, negligently backed into the traffic lane and young Smith was guilty of negligence in driving forward with his head turned to the left and in failing therefore to observe the road ahead.
It was the opinion of the Trial Court Smith had the last clear chance to avoid the collision with the stationary vehicle by stopping the forward progress of his automobile; his negligence in not doing so resulted in his not availing himself of the last clear chance to avoid the collision. We *341 are of the opinion the doctrine of last clear chance is not applicable to Smith so as to permit recovery by Plaintiffs despite the negligence of Mrs. King.
 The doctrine of last clear chance or discovered peril is a jurisprudential rule announced by the courts, permitting recovery by a plaintiff guilty of negligence when damaged by a defendant who saw or should have seen the perilous position in which plaintiff had placed himself, which damages could have been avoided by defendant taking reasonable precautionary measures. The essential conditions or elements giving rise to the application of the doctrine of last clear chance are: (1) plaintiff had placed himself in a perilous position of which he is unaware or from which he is unable to extricate himself; (2) discovery or reasonable opportunity for discovery by defendant of the perilous position in which plaintiff has placed himself; and (3) the opportunity afforded defendant to avoid the accident by the exercise of reasonable care. O’Dell v. Hood, La.App., 126 So.2d 373; Newton v. Pacillo, La.App., 111 So.2d 895; Rottman v. Beverly, 183 La. 947, 165 So. 153; and Jackson v. Cook, 189 La. 860, 181 So. 195.
From an analysis of the facts of this case, insofar as the applicability of the doctrine to Walter Smith, the second and third elements are present. We are satisfied Smith was not observing the road ahead but, to the contrary, was driving with his head turned to the left. Had he been looking forward he would have had an opportunity to discover the position of peril in which Mrs. King had placed herself and, as he was driving slowly, he might easily have avoided the accident by applying the brakes. The first element of the doctrine, however, is clearly lacking, as is obvious from a reading of Mrs. King’s testimony and the uncontradicted evidence presented at the trial. From Mrs. King’s testimony it is obvious she observed the Smith vehicle approaching slowly a distance of sixty feet. She also observed Smith was driving while having his head turned to the left and not looking forward. She commented to her friend, a passenger in her car, she was of the opinion the Smith vehicle would strike hers. She remained stationary and only took the precaution to sound the horn on her vehicle just prior to the time the impact occurred. She noted Smith was not observing the road ahead, though her explanation for her actions was, she anticipated he would, prior to colliding, look ahead, observe her, stop his vehicle and thereby avoid the collision. In our opinion, upon reviewing the factual circumstances of this case, if the doctrine of last clear chance were applicable, it was Mrs. King who was afforded the last clear chance to avoid this accident. Her observation of the approaching Smith vehicle sixty feet away with the driver obviously not looking ahead, Mrs. King could have avoided the accident by retracting the backed position in which she had placed her car and simply moved forward as she should have done and as the evidence reveals she had ample time to do. Thus, Mrs. King, being aware of the danger in which she had placed herself, had ample opportunity and was in a position to extricate herself from her perilous position. Accordingly, the doctrine of last clear chance is not applicable in her favor.
The facts of this case are analogous to the issues presented in Josey v. Granite State Fire Insurance Company, La.App., 122 So.2d 303. A motorist, Nargassan, the operator of a vehicle insured by defendant, was held liable under the application of the doctrine of last clear chance when he backed his car into the road in the path of oncoming traffic. The Court concluded the sole proximate cause of the accident was the negligence of Nargassan; however, it further held Nargassan was negligent in failing to avail himself of the last clear chance to avoid the collision in these words:
“Nevertheless, if there could be any doubt as to our absolute conviction on the above points, we would have no hesitancy in permitting plaintiff’s recovery under the doctrine of the last *342 clear chance. According to Nargas-san’s own testimony, he sat in his automobile and observed the approach of the Josey car for a distance of two hundred and fifty feet, noted its position at least partially in the west lane of the highway, yet made no move to take any action which would have avoided the collision. If the speed of the Josey vehicle be accepted as being sixty-five miles per hour, Nargassan sat, without action, for approximately two and one-half seconds, relying, as he testified, upon his own rights to be in the highway, notwithstanding the fact that he was in the path of an approaching vehicle. His attitude in this respect is reminiscent of the well known epitaph:
“ ‘This is the grave of Mike O’Day, Who died maintaining his right-of-way.
His right was clear, his will was strong,
But he’s just as dead as if he’d been wrong.’
“Additionally, it is appropriate to observe that even with proper allowance for reaction time Nargassan had more than one and one-half seconds within which to move his car forward and entirely out of danger. Under the facts which we have above noted, it would have been necessary for him to move his car only a distance of two or three feet. In such circumstances, we cannot conceive of any question as to his liability under the appropriate application of the doctrine of last clear chance.”
In our opinion the doctrine of last clear chance is applicable against Mrs. King and in favor of Smith. From the evidence Smith, and not Mrs. King, was in a position of peril of which he was unaware. Mrs. King discovered his peril and had the opportunity by the exercise of reasonable precaution to avoid the accident but failed to do so. In such circumstances, the decision of the Supreme Court in Bergeron v. Department of Highways, 221 La. 595, 60 So.2d 4, in our opinion, is particularly applicable wherein the Court (60 So.2d p. 8) said:
“ * * * The rule of 'the last clear chance’ or ‘discovered peril’ applies to both parties who are involved in an accident. In 38 Am.Jur. Negligence,, Sec. 227, that thought is expressed as follows: ‘As graphically stated by some authorities, the doctrine of discovered peril is a two-edged sword, applicable equally to the rights of a defendant and those of a plaintiff.’ Under the facts of this case it was the bicycle rider who-had the better opportunity to observe the situation and apprehend the danger before it became imminent. His opportunity came as late, if not later than that of the truck driver, to avoid the accident; he had the last clear chance and is not in a position to invoke its provisions against the defendants.”
Accordingly, the judgment of the Trial' Court is reversed and Plaintiffs’ actions are-dismissed at their costs.
Reversed and rendered.