LOTTINGER, Judge.
Petitioner, Travelers Fire Insurance Company, sues as subrogee of its assured for damages to a tractor. The defendant is Robert Savoy, the tenant-farmer on whose farm the tractor was working at the time of the accident. From judgment in favor of defendant, the petitioner has appealed.
The damaged tractor was owned by Dr. Frank O. Tomeny, Percy J. Sanchez and Ulysse J. Sanchez. It was the custom of the farmers in the community to help each other with the harvesting of cane crops whenever one of them got behind in harvesting. On December 20, 1951, the defendant, Robert Savoy, was behind in his harvesting and such assistance was afforded him by his neighbors.
The facts show that an Allis-Chalmers Tractor owned by the petitioner’s assured, was damaged while crossing a bridge on the farm operated by the defendant. There is no question as to the fact of the damages, or the negligence of the driver. The only question involved in this suit is whether or not the driver of the tractor was the agent of the defendant, so as to render the defendant liable for the damages.
The record discloses that defendant was a tenant-farmer on a plantation owned by Cora-Texas Planting and Manufacturing Co. As consideration for his rental of said farm, the company would receive approximately one-fourth of the crop harvested thereon. Percy Sanchez, one of the owners of the tractor in question, received instructions from Paul Kessler, President of the said company, to drive the tractor on the defendant’s farm and assist the defendant in harvesting his cane crop, as the mill was about to close down in a few days. In response to his said instruction, Percy Sanchez drove the tractor on the farm of defendant and assisted in the harvest of defendant’s crop.
At' the time of the accident, the tractor was being driven by Alvin Legleu. According to the petition, and the testimony of Percy Sanchez, the defendant instructed Alvin Legleu to drive the tractor in question. The conversation between Percy Sanchez and Alvin Legleu on this score, and as testified by Edward Legleu, was as follows:
"Q. Will you explain, if you can, the conversation which took place, if it took place, between you, Mr. Percy, and Mr. Alvin Legleu ? What did you say to him or what did he say to you?
“A. Alvin asked Percy what was the matter with the tractor on the headland, and Percy told him he didn’t have any driver, so Alvin told him he could drive, so Percy asked me if he could, and I told him that he should, that he had been driving for three or four years. Percy said, ‘If you can drive it, go ahead,’ so Alvin went and got on the tractor and started loading.
“Q. Then it was Mr. Percy Sanchez that put Mr. Alvin Legleu on that tractor ?
*70 "A. After he asked him if he could drive, and Alvin told him yes, so he said to go ahead. The boy wouldn’t have gotten on there without his permission.”
The record discloses that defendant was ill on the day of the accident, and, although he did attempt to leave his home and go into his field, he was unable to do so and returned to his home. The record further shows that Alvin Legleu had been working for defendant for a couple of days prior to the date of the accident, and was paid wages both prior to, and on the date of the accident by defendant.
The Lower Court found that, although Alvin Legleu was an employee of the defendant on the date of the accident, he was not an agent of the defendant insofar as the driving of the tractor was concerned.
Considering the evidence in this case, it is very probable that the defendant did not know that his employee was driving the tractor until after the accident had occurred. However, the evidence does show, without contradiction, that Alvin Legleu was employed by the defendant, and was acting to the advantage, benefit and in furtherance of his employer’s purpose in driving the tractor.
Under the employer-employee relationship, it is clearly established that an employer is responsible for the acts of his employee while acting within the course and scope of his employment. There is no question but that Alvin Legleu was an employee of the defendant at the time of the accident, and, furthermore, that he was acting within the scope and course of his employment at the time.
In Oglesby v. Town of Winnfield, La.App., 27 So.2d 137, 144, the Court said:
“ * * * Anyway, it is not necessary to become liable for the tort of an agent that the tort be expressly authorized by the principal. This is rarely done. If the tort is committed within the scope of the agent’s employment and in furtherance of his master’s interest, liability therefor ensues.”
The facts show clearly that the acts being done by Alvin Legleu at the time of the accident, were solely for the purpose of harvesting the defendant’s crop. It was the custom of the farmers to help out the other farmers in the saving of their crops in lending employees and equipment. The farmer who borrowed the employee would pay the employee’s wage. This was the reason that Percy Sanchez and his tractor went onto . the defendant’s farm. It is clear that Sanchez did not arbitrarily pick out a person to drive the tractor, but first questioned Alvin Legleu, as well as his cousin, as to his qualifications, and found out that Legleu had been driving the same make of tractor for several years. Sanchez, only after having found Legleu to be a qualified and experienced driver, gave him permission to drive the tractor. This was all done solely for the benefit and advantage of the defendant, and Sanchez had nothing to gain by his action except the satisfaction of performing an act of kindness toward his friend and neighbor.
Let us take a hypothetical case where Legleu had not been working for the defendant, but was an employee of Sanchez. Under this assumption^ suppose that Sanchez went to defendant’s farm, with his employee, Legleu, and his tractor. While harvesting defendant’s crop, Legleu was injured. Who would then be responsible under the Workmen’s Compensation Laws for the injuries to Legleu ? We believe that, under the doctrine of borrowed employees, the defendant would be liable in compensation to Legleu, as at the time of the injury Legleu was working solely for the benefit and advantage and under the direction of the defendant. The borrowed employee doctrine is now well established in our jurisprudence. See Sadler v. May Bros. Inc., La.App., 185 So. 81; Spanja v. Thibodeaux Boiler Works, Inc., La.App., 2 So.2d 668 and Robinson v. Atkinson, 198 La. 238, 3 So.2d 604.
The instant case is, in our estimation, even stronger than our hypothetical *71 case. Here the record shows that Legleu was employed by defendant for a couple of days prior to the date of the accident. The owner of the tractor took pains to see that Legleu was a qualified driver before he permitted him to drive the tractor. There was no question but that Legleu’s act of driving the tractor was solely for the benefit and advantage of the defendant. Furthermore, the evidence shows that Leg-leu had been driving the tractor for some time prior to the accident, and no one had made any objection to his driving the tractor. Although the evidence is not entirely clear on the matter, it indicates that defendant’s son-in-law was in charge of the harvesting. Although he knew that Leg-leu was driving the tractor, he made no objection. We therefore, feel that Legleu had at least the implied permission of the defendant, or his agent in charge, to drive the tractor, and that Legleu was acting within the course and scope of his employment with defendant at the time of the accident. Inasmuch as the driver was the employee of defendant at the time of the accident, and was acting within the course and scope of his employment at the time, we feel that, under the master and servant rule, the defendant is liable for the damages to the tractor.
Defendant has made objection to the fact that the petitioner has failed to introduce the policy of insurance into evidence. The testimony of Percy Sanchez shows that there was a collision policy in existence at the time of the accident, and that the owners have been paid by petitioner for the damages to the tractor. A contract of subrogation has been filed into evidence. Furthermore, the record shows that defendant has paid the $50 deductible under the policy, allegedly out of the kindness of his heart. In view of the fact that the record clearly shows that the insurance company has paid the damages, and has been subrogated to the rights of its assured, we feel that introduction of the policy is not necessary.
The damages to the tractor, over and above the $50 deductible which has already been paid, was in the sum of $235.25. This amount is not in dispute. We feel that petitioner should have judgment in said amount.
For the reasons assigned, the judgment of the Lower Court is reversed, and there is judgment herein in favor of petitioner and against defendant in the sum of $235.-25, plus legal interest from date of judicial demand until paid, defendant to pay all costs.
Reversed.