LANDRY, Judge.
This suspensive appeal by defendants Glenn A. Glass and his liability insurer, Safeco Insurance Company of America (Safeco), is from the judgment of the trial court awarding damages to plaintiff, John C. Smith, individually and as natural tutor of his sixteen-year-old minor son, Harvey M. Smith, for personal injuries and related expense arising from an intersectional accident involving a Honda motorbike driven by young Smith and an automobile operated by Mrs. Betty Glass, wife of defendant Glenn A. Glass. The accident happened while Mrs. Glass’ car was stopped in a gap or break in the neutral ground of Airline Highway, Baton Rouge, Louisiana, at the intersection of said highway and Victoria Drive.
We find that our brother of the trial court improperly held Mrs. Glass guilty of negligence proximately causing the accident and reverse his judgment in favor of plaintiff.
Airline Highway is a four-laned paved thoroughfare running in a northerly-southerly direction and comprises one of the main traffic arteries of the capital city. Intersecting Victoria Drive is an inferior two-lane roadway. At the crossing thus formed, the northbound lanes of Airline Highway are separated from the southbound lanes by a neutral ground variously estimated at from 12 to 15 feet in width. Victoria Drive, which runs easterly and westerly, intersects favored Airline at more or less a right angle and forms a true intersection therewith in that Victoria Drive continues both easterly and westerly from Airline. The exact width of Victoria Drive is not established in the record. While the evidence is not entirely clear on the subject, it appears the combined width of the two northbound lanes of Airline Highway is at least 24 feet and the southbound lanes are of approximately the same dimension.
The accident occurred December 9, 1965, at approximately 6:30 P. M., as Mrs. Glass, who lived in a trailer court situated on Victoria Drive east of and near the intersection with Airline, was proceeding westerly on Victoria Drive with the intention of entering Airline and making a left turn to proceed southerly to a restaurant. It is shown that the area was well lighted with street lights. The collision transpired after Mrs. Glass had successfully negotiated the two northbound lanes of Airline and brought her vehicle to a stop in the neutral ground to await the clearance of southbound traffic before making her turn. It is conceded the neutral ground is not sufficiently wide to permit a motorist to completely “hide therein”, that is, park in the neutral ground in such fashion that no portion of his vehicle extends into either the north *369 bound or southbound lanes. The evidence preponderates to the effect that Mrs. Glass brought her vehicle to a stop in the neutral ground with no portion thereof extending into the southbound lanes but with approximately two or three feet of the rear of her car projecting into' the inside northbound lane. Harvey Smith, proceeding northerly along Airline Highway on his Honda motorbike, in the inside lane, at a speed of approximately 45 to 50 miles per hour, attempted to go around the stationary Glass automobile which thus obstructed his path of travel. He was unsuccessful in that his left knee struck the left rear fender or bumper of the Glass vehicle. Following this impact, the motorbike proceeded an additional 50 to 100 feet at which point the Smith lad fell therefrom on or near the eastern shoulder of Airline Highway.
Plaintiff maintains Mrs. Glass was guilty of negligence in not yielding the right of way and attempting to cross Airline Highway from the inferior street in the face of oncoming northbound traffic. Plaintiff also contends Mrs. Glass was negligent in stopping with a portion of her vehicle intruding into a travel lane of the highway. In substance the trial court found Mrs. Glass negligent in not waiting at the intersection of Victoria Drive until both northbound and southbound traffic upon Airline Highway was clear so that the intended left turn could have been made without stopping in the neutral ground.
A disputed issue of some importance is whether or not Mrs. Glass stopped in obedience to the stop sign situated at the intersection of Airline Highway and Victoria Drive. On this point we find the evidence preponderates in favor of the conclusion she did in fact stop.
In substance Mrs. Glass testified she had resided at Big Oaks Trailer Court, situated on Victoria Drive just east of Airline Highway, for approximately four years and was thoroughly familiar with the intersection in question having negotiated it countless times. As she approached the crossing, she stopped in obedience to the stop sign before proceeding onto Airline Highway. While stopped she was summoned by her landlady, Mrs. Mollie Aucoin, owner of the trailer park, whose residence was at the corner of Airline Highway and Victoria Drive. Mrs. Glass then waited for Mrs. Aucoin to come to her car and deliver a package, following which Mr.s. Glass waited for northbound traffic to clear and then entered and crossed the two northbound lanes of Airline Highway. Mrs. Glass brought her vehicle to a halt in the neutral ground to await the passage of southbound vehicles which prevented her immediate entry into the southbound lanes. She was certain no portion of her car projected into the southbound lanes and that approximately two or three feet of the rear of her automobile extended into the inside northbound lane. According to Mrs. Glass, she had been thus stopped for at least a minute when she felt a “little crash” and upon looking around saw young Smith on the Honda. Thinking he had “messed up the back of her car” and would not stop she immediately “sat on her horn.” She observed the motorbike proceed a distance of about 100 feet and appear to overturn on the Smith youth at or near the eastern shoulder of Airline Highway. Thereupon she became excited and immediately proceeded to the lad’s aid. As she hurriedly alighted from her car, it began to roll backward (easterly) a foot or two whereupon she hastily reentered the vehicle and set the emergency brake without moving the vehicle to its original stopped position. She was certain that when she entered the intersection both northbound lanes were free of traffic. She was equally positive that she waited in the neutral ground for at least one minute before the impact occurred. Mrs. Glass further testified that she was unaware of the presence of the motorbike until the moment of impact which caused her to look to the rear to see what had occurred.
Harvey Smith testified he was proceeding northerly on his Honda in the inside north *370 bound lane at a speed of about 45 to 50 miles per hour. The outside northbound lane was free and clear of traffic. He observed Mrs. Glass approach the intersection from his right and was certain that she did not come to a complete stop at the stop sign. When he was approximately 75 to 100 feet from the intersection, Mrs. Glass entered the crossing at a speed Smith estimated at approximately 20 miles per hour. He applied his brakes but because his machine was light, its rear wheel began to skid or slide. He then released his brake and attempted to pass to the rear of the Glass vehicle but his left knee struck the left rear fender of the automobile. He did not lose control of his motorbike which proceeded northerly in the outside lane. Smith was unable to release the kickstand on his vehicle so he drove off on the shoulder of the highway about 100 feet north of the intersection and permitted the machine to fall over on its side. He repeatedly stated that the Glass car had come to a complete stop in the neutral ground for “several seconds” before the impact. He was equally certain that only two or three feet of Mrs. Glass’ automobile was protruding into the inside northbound lane of Airline Highway. On both direct and cross-examination, Smith in effect testified that he was about 75 feet from Mrs. Glass when she entered the intersection and approximately 50 feet from her vehicle when he attempted to veer to the right to avoid striking her stationary automobile.
Mrs. Mollie Aucoin, proprietor of the trailer park in which Mrs. Glass resided, testified she had known Mrs. Glass for approximately four years. She and Mrs. Glass had been quite friendly until Mrs. Glass moved away during the interval between the accident and the trial of this action. She did not voluntarily appear as a witness but was summoned by defendants. Mrs. Aucoin deposed her residence is situated at the intersection about 20 feet from Airline Highway. Shortly before the accident she was ironing in her front room which faced Airline Highway. The room contained a large picture window which looked out upon the highway. She was looking at the highway through the window as was her custom to watch for “late arrivals” to her trailer park. Her young son, studying his lessons, occupied a sofa or couch in the room. As she gazed through the window, she noticed Mrs. Glass stop at the stop sign on Victoria Drive and wait for northbound traffic to clear on Airline Highway. Having a package for Mrs. Glass and not having seen Mrs. Glass for three or four days, Mrs. Aucoin took the package, went outside and delivered the package to Mrs. Glass who was stopped at the intersection. Mrs. Aucoin reentered her front room, resumed her ironing and observed Mrs. Glass stopped in the neutral ground waiting for southbound traffic to clear. After an interval estimated at from two to three minutes, she heard what she deemed a light crash whereupon her son stated: “Mama, that’s Mrs. Glass out there.” Mrs. Aucoin went immediately to the scene and upon arrival noted that approximately one to two feet of the rear of the Glass vehicle extended into the northbound lane of Airline Highway.
Louis White, Officer, Baton Rouge City Police, testified he was summoned to investigate the accident. Upon arrival he found no skid marks or debris indicative of the point of impact. From information imparted by witnesses he judged the point of collision to be from 6 to 8 feet east of the west parallel of the inside northbound lane of Airline Highway. His recollection was that the Glass vehicle was in the neutral ground with its rear extending 6 to' 8 feet into the inside northbound lane of Airline Highway.
Marvin Edward Thomas, brother-in-law of the injured Smith lad, testified his was the second vehicle to stop at the site of the accident following the mishap. In essence his testimony was that the rear of the Glass vehicle blocked virtually the entire inside northbound lane of Airline Highway.
*371 Manifestly, the occurrence of the accident in the manner related by young Smith is most difficult to believe. According to his version, he was only 75 feet from the Glass car when it entered the intersection and only 50 feet distant after Mrs. Glass traversed the two northbound lanes, stopped in the neutral ground and had remained stationary for a few seconds.
By simple mathematical computation, a vehicle traveling 45 miles per hour proceeds at the rate of 66 feet per second. Mrs. Glass, driving at 20 miles per hour was covering 29 feet per second. It was impossible therefore for Mrs. Glass to have entered the intersection at such speed, cross the northbound lanes which measure a total width of at least twenty-four feet, bring her vehicle to a stop, remain stationary for a few seconds, and Smith, traveling at 45 miles per hour, still be fifty feet from the point of impact.
We believe the accident occurred substantially in .the manner related by Mrs. Glass, namely, that she negotiated the northbound lanes when they were clear of oncoming traffic, proceeded into the gap in the neutral ground and remained stationary there for some time to permit passage of southbound vehicles.
The salient question is whether Mrs. Glass was negligent in stopping as she did in the neutral ground. In urging affirmation of the trial court judgment, counsel for appellee relies primarily upon Jenkins v. Brignac, La.App., 146 So.2d 649, and Bergeron v. Hetherwick, La.App., 140 So. 2d 440, neither of which we find decisive of the issue at hand inasmuch as both are clearly distinguishable on their facts.
In each of the cited cases the crossing motorist was struck as she proceeded across the two remaining lanes of a four-lane highway, after having first stopped in the neutral ground.
In the case at hand, Mrs. Glass’ automobile was struck while stopped in the neutral ground. Her vehicle was not struck while in motion crossing the path of a vehicle proceeding upon the favored street as in the Brignac and Bergeron cases, supra. At the time her vehicle was struck, Mrs. Glass could do nothing to avoid a collision.
In finding Mrs. Glass negligent, the trial court relied primarily upon Chase v. Burley, La.App., 76 So.2d 587, and Waggonner v. Allstate Insurance Company, La.App., 128 So.2d 214. The Chase case, supra, involved a motorist who stopped at the intersection of a favored street and then proceeded yet failed to note the approach of an oncoming vehicle. Therein the court properly held that stopping for the favored thoroughfare discharges only a portion of the duty incumbent upon the driver crossing on the inferior roadway. With this general principle of law, we are in complete accord. The tenet involved, however, is without application to the case at bar.
Citing those portions of the Waggonner decision, supra, to the effect that negligence must constitute the proximate cause of injury to be actionable, the trial court then held it was immaterial whether Mrs. Glass stopped before entering the intersection since she was negligent, in entering at such time that she could not complete her entire turn without stopping.
We hold that as a matter of law, it was not negligence on the part of Mrs. Glass to enter the intersection when she did since the record is abundantly clear she did so at a time when it did not impede or interfere with northbound traffic upon Airline Highway. Nor do we find that she was negligent in stopping within, the neutral ground under the circumstances, existing herein, with two or three feet of her car extending into the inside northbound lane of Airline Highway.
We concur in the view expressed by our brothers of the Fourth Circuit in Garrett v. Toye Brothers Yellow Cab Co., 58 So.2d 418, wherein they held it is not negligence per se for a motorist crossing a multiple lane highway to traverse one half *372 the roadway and stop in the neutral ground to await passage of traffic on the remaining portion, notwithstanding the neutral ground is not sufficiently wide to permit the crossing motorist to stop without any portion of his vehicle extending into the lanes already traversed. We also share the opinion expressed in the Garrett case, supra, to the effect that all that is required of the crossing motorist under such circumstances is that he exercise reasonable care for his own safety as well as that of other motorists proceeding lawfully upon the highway. What constitutes reasonable care is, of course, a matter to be determined in the light of the circumstances af each particular case.
In the instant case weather conditions were favorable, northbound traffic on Airline Highway was not congested, the outside northbound lane was clear of vehicles, Mrs. Glass stopped before entering the intersection, proceeded across the northbound lanes in a reasonable manner and without incident until she reached the break in the neutral ground where she made a normal stop to await clearance of southbound vehicles. There was nothing she could do except wait until the way was clear for her intended left turn. She had a right to assume that motorists proceeding northerly on Airline Highway would not run into her stationary vehicle as traffic was not congested and any driver maintaining a proper lookout could or should have seen her stopped vehicle and passed safely to the rear thereof.
We find Mrs. Glass free of any negligence whatsoever. Accordingly, the judgment of the trial court in favor .of plaintiff is annulled, reversed and set aside and judgment rendered herein in favor of defendants, Glenn A. Glass and Safeco Insurance Company of America, and against plaintiff, John C. Smith, individually and as natural tutor of his minor son, Harvey Smith, with prejudice, at plaintiff’s cost.
Reversed and rendered.