218 So.2d 662 (1969)
Helen ALLEN, wife of/and Leo S. Allen, Individually and as Trustees for Government Employees Insurance Company, and Government Employees Insurance Company
v.
Sybil L. BAUCUM.
No. 3330.
Court of Appeal of Louisiana, Fourth Circuit.
February 3, 1969.
*663 John I. Hulse IV, of Hammett, Leake & Hammett, New Orleans, for plaintiffs-appellants.
Jack A. Williams, of Kytle & Williams, Kenner, for defendant-appellee.
Before SAMUEL, CHASEZ and BARNETTE, JJ.
CHASEZ, Judge.
The plaintiffs in this action, Helen and Leo S. Allen, individually and as trustees for their insurer Government Employees Insurance Company, and Government Employees Insurance Company individually, bring this appeal from a judgment which rejected their demands against the defendant herein, Sybil L. Baucum.
The litigation arose out of an automobile collision which occurred at approximately 7:30 A.M. on December 6, 1966, at the intersection of Chef Menteur Highway and Bundy Road in the City of New Orleans. Plaintiff Leo S. Allen in the company of his wife Helen was driving his car on Bundy Road toward Chef Menteur Highway, and stopped in obedience to a stop sign at the intersection of the highway. He then proceeded into the highway which at that point is a four lane thoroughfare divided by a neutral ground. He brought his vehicle to a stop in the neutral ground after crossing the two inbound lanes of traffic, and waited there for the traffic to clear in the outbound lane before proceeding further. It is clear from the record that Allen's vehicle did not completely clear the inbound lane nearer the neutral ground, so that as he was stopped in the neutral ground the rear end of his vehicle protruded approximately four feet into this lane.
There is some dispute as to the length of time Allen was so positioned in the neutral ground before the accident occurred. Pretermitting a discussion of this point for a moment, the record establishes that the Allen vehicle was so stopped when struck by the defendant's vehicle which had been proceeding toward New Orleans in the left hand lane of the highway, that is, the lane closer to the neutral ground. The police were called to the scene of the accident and they ticketed Mr. Allen for a driving violation.
Mr. Allen's insurer is the plaintiff Government Employees Insurance Company, hereinafter referred to as GEICO. GEICO paid Mr. Allen the sum of $116.29 for damages allegedly done to his car by the collision, over and above the $100.00 deductible portion of the policy. In addition it paid Mrs. Allen $250.00 under the uninsured motorists' provision of the policy for bodily injury she allegedly suffered as a result of the accident. Miss Baucum carried no liability or collision insurance on her automobile. In return for the $250.00 payment Mrs. Allen executed a release and trust agreement in which she agreed to hold in trust for the benefit of GEICO all rights, claims and causes of action which she might have against the party responsible for her injuries, and to take any legal action in her name for GEICO to recover the damages paid by GEICO for these injuries. In addition GEICO became the subrogee of Mr. Allen's rights against Miss Baucum to the extent of the $116.29 it paid to him for car repairs. Thus Mr. Allen is here in his individual capacity to recover the $100.00 he paid for the damages to his vehicle. Mrs. Allen is here as trustee in behalf of GEICO to recover the $250.00 paid to her under the uninsured motorists' clause of the policy and GEICO is here in its individual capacity as the subrogee of Mr. Allen to recover the $116.29 it paid to him for car repairs. There are no other claims for damages by any of the parties.
*664 We are of the opinion that the trial judge was in error in dismissing the plaintiffs' suit. He gave no reasons for his judgment thus we are unable to determine his particular conclusions of fact.
The principal factual issue now in dispute as mentioned above, and one we find essential to the determination of liability, involves the length of time plaintiff Allen was situated in the neutral ground before being struck by the Baucum vehicle.
As to this Mr. Allen made the following statements at the trial below:
"A. The width of the neutral ground on the Chef Menteur Highway is nine paces. The opening is eighteen paces. I came to a stop, looked to the left, I seen no oncoming traffic, I proceeded to cross into the neutral ground at an angle.
Q. Now, were you getting ready to turn left on Chef Menteur Highway or what were you going to do?
A. Yes, I was getting ready to turn left to proceed to the Michoud Facility, that is going outbound of New Orleans. That is going in the direction of east. My wife was looking at the oncoming traffic and I was too.
Q. When you say this is, will you describe to the court what you are talking about now? Were you all already in the neutral ground area at that time?
A. Yes, I was already in the intersection of Chef Menteur way stopped.
Q. You had come to a complete stop?
A. A complete stop. My wife and I were talking and I says, traffic is quite heavy this morning going outbound. I reached in my pocket, unwrapped a cigar, put the cigar wrappings in my cigarette compartment, lit my cigar and at that time I heard some skidding and then I turned to the left and I seen the oncoming car that was going to strike me. At that time I turned to the right to see if I had a clear shot that I could make a right-hand turn because I knew she was going to hit me because she was up against the curb, riding the curb. All right. The traffic was so heavy that morning going outbound that I couldn't pull forward and when I made my stop, I do not believe at any time that the rear end of my car was on the other section of the Chef Menteur Highway.
Q. What position was your car in when you were stopped in the neutral ground? Was it straight ahead or was it at an angle?
A. It was at about fifteen to twenty degrees angle.
Q. And you were getting ready to turn left, is that right?
A. That's right.
Q. And you were just waiting for the outbound traffic?
A. This is correct.
Q. How long would you estimate you were at a complete stop in that neutral ground intersection of Chef Menteur Highway and Bundy Road?
A. Oh, I would say approximately, between a minute and a half to two minutesa complete stop."
Mrs. Allen testified as follows on this subject:
"Q. When your husband stopped at the intersection of Bundy Road and Chef Menteur Highway and went on across into the neutral ground, how long do you think you were stopped there before the collision occurred?
A. Well, several minutes because he did unwrap a cigar and start lighting it when the impact occurred."
*665 Plaintiffs called as an additional witness Mr. Jose Rabel, the operator of a service station on the corner of Bundy Road and Chef Menteur Highway. Rabel testified that he saw the Allen vehicle stopped in the neutral ground in the intersection of Chef Menteur Highway and Bundy Road prior to the accident. He then made the following statements in reply to counsel's questions:
"Q. How long would you estimate that he was stopped in the neutral ground?
A. Well, from the time I went out the door to about, in my opinion, it was about ten or fifteen seconds, all I can say, you see.
Q. That you saw him?
A. I saw him, that's right.
Q. He was stopped at least ten or fifteen seconds?
A. Right. I don't know before. I wasn't looking that way before, but when I got out from the door to the pump, about ten or fifteen seconds. That's all I can say."
* * * * * *
"Q. So, if I may go over your testimony, you saw Mr. Allen's car stop?
A. Stop, yes.
Q. For about ten or fifteen seconds?
A. Well, I saw, when I went out the door, you see, I didn't look any more that way because I had no reason to look over there.
Q. When was the next time you looked up?
A. When I heard the noise of the brakes, you see.
Q. When you heard the squealing of brakes?
A. Right.
Q. What did you see?
A. And then when I looked in that direction again, I saw the (indicating) the impact.
Q. You saw the other car strike Mr. Allen's car?
A. Right."
Finally the defendant herself, Sybil Baucum, had these statements to make at the trial:
"Q. As you approached Bundy Road, what did you notice, and, tell us and describe the accident in your own words, if you will?
A. Well, approximately a block or maybe a little further away than a block, a red car came across the highway to make, to apparently make a lefthand turn going in the opposite direction and he stopped in the neutral ground area with the back part of his car in my lane and I applied my brakes and I tried to get into the other lane to go around him, but the traffic was too heavy, so when I jammed my brakes on, I went into a skid. I saw I couldn't go around him, I had to stop, and I jammed my brakes on and when I did I just started skidding and I skidded straight into the back of his car, into the side."
* * * * * *
"Q. When you first saw Mr. Allen's car, was he stopped in the intersection?
A. He was coming to a stop. He was crossing the highway coming to a stop.
Q. How far away from him were you at that time?
A. About a block.
Q. About a block?
A. Yes.

*666 Q. In other words, you were one whole block away at the beginning of the street at the next block?
A. Yes.
Q. And you saw him already in the street and entering the intersesction, is that right?
A. That's right.
Q. He was entering the place where he subsequently stopped?
A. Yes.
Q. So, you travelled for an entire block before the collision occurred?
A. Yes."
It is evident then from the testimony of all the witnesses and parties to the accident, that the Allen vehicle was stationary in the neutral ground for at least 15 seconds, and probably longer prior to the collision. Miss Baucum admitted that she had been travelling at a speed of 40 miles per hour. Hence as a matter of simple mathematics we find that Miss Baucum was considerably farther away from the intersection of Bundy Road when the Allen vehicle came to a stop in the neutral ground than the "little over a block" to which she testified.
Thus we are not involved here with a driver who pulled out into a busy right of way directly in the face of oncoming traffic. Rather we are concerned with a situation where a driver attempted to cross a favored thoroughfare when oncoming traffic was over a block and a half away, even though he did not know if he would be able to complete his crossing maneuver because of traffic in the opposite lanes, with the result that his vehicle partially blocked one lane of traffic. The oncoming vehicle subsequently collided with the crossing vehicle when the latter was stopped in the neutral ground.
We find the recent case of Smith v. Glass, 202 So.2d 367, La.App. 1 Cir. 1967, cert. den. 251 aL. 387, 204 So.2d 573 (1967), to be applicable herein. In that case the defendant attempted to cross Airline Highway near the city of Baton Rouge, and was able to negotiate the two inbound lanes before bringing her vehicle to stop in the neutral ground. As in the case herein, the rear of the crossing vehicle extended back into one lane of the highway partially blocking it. The court found that it was stationary there for some time before the vehicle was struck by the plaintiff's motorcycle. The court there made these statements about that situation:
"In the case at hand, Mrs. Glass' automobile was struck while stopped in the neutral ground. Her vehicle was not struck while in motion crossing the path of a vehicle proceeding upon the favored street as in the Brignac [Jenkins v. Brignac, La.App., 146 So.2d 649] and Bergeron [Bergeron v. Hetherwick, La.App., 140 So.2d 440] cases, supra. At the time her vehicle was struck, Mrs. Glass could do nothing to avoid a collision."
* * * * * *
"[2, 3] We hold that as a matter of law, it was not negligence on the part of Mrs. Glass to enter the intersection when she did since the record is abundantly clear she did so at a time when it did not impede or interfere with northbound traffic upon Airline Highway. Nor do we find that she was negligent in stopping within the neutral ground under the circumstances existing herein, with two or three feet of her car extending into the inside northbound lane of Airline Highway.
"[4, 5] We concur in the view expressed by our brothers of the Fourth Circuit in Garrett v. Toye Brothers Yellow Cab Co., [La.App.] 58 So.2d 418, wherein they held it is not negligence per se for a motorist crossing a multiple lane highway to traverse one half the roadway and stop in the neutral ground to await passage of traffic on the remaining portion, notwithstanding the neutral ground is not sufficiently wide to permit the *667 crossing motorist to stop without any portion of his vehicle extending into the lanes already traversed. We also share the opinion expressed in the Garrett case, supra, to the effect that all that is required of the crossing motorist under such circumstances is that he exercise reasonable care for his own safety as well as that of other motorists proceeding lawfully upon the highway. What constitutes reasonable care is, of course, a matter to be determined in the light of the circumstances of each particular case.
"[6] In the instant case weather conditions were favorable, northbound traffic on Airline Highway was not congested, the outside northbound lane was clear of vehicles, Mrs. Glass stopped before entering the intersection, proceeded across the northbound lanes in a reasonable manner and without incident until she reached the break in the neutral ground where she made a normal stop to await clearance of southbound vehicles. There was nothing she could do except wait until the way was clear for her intended left turn. She had a right to assume that motorists proceeding northerly on Airline Highway would not run into her stationary vehicle as traffic was not congested and any driver maintaining a proper lookout could or should have seen her stopped vehicle and passed safely to the rear thereof."
We concur with these statements made by the court in the Glass case. Following its rationale we find no basis for finding Mr. Allen's actions under the circumstances herein constituted negligence. He did not proceed out into the highway until he ascertained that oncoming traffic was a safe distance away. He then attempted to cross the highway and make his turn but was unable to do so because of traffic from the other direction. He positioned himself in the neutral ground so that as much of his vehicle as possible would be clear of the roadway and waited until he could complete his maneuver.
Defendant contends that the weather conditions prevailing at the time of the accident takes this case out from under the rule of the Glass and Garrett cases. We do not agree with defendant's factual conclusions as to the condition of the weather at the time of the accident. Mr. Rabel, the only independent witness to the accident who testified at the trial below, stated that while it had been raining for a period of time prior to the accident, at the time the accident occurred the rain had stopped, the weather was generally clear and visibility was not impeded. Thus we find that the weather was not an unusual factor in this case.
Defendant relies on the statutory right of way afforded her as a driver on a through highway, to support her contention that she was free from negligence in this matter.
We of course agree that Chef Menteur Highway falls within the contemplation of LSA-R.S. 32:265, and that as a driver on said highway Miss Baucum had the right of way over vehicles approaching or entering from less favored thoroughfares. However we do not agree that this right of way allowed her to continue toward the intersection of Bundy Road without taking appropriate action to avoid the Allen vehicle stopped there. Since she saw the Allen automobile when she was at least over a block from it (her own admission) she should have been able to avoid hitting it had she taken the proper care commensurate with the circumstances. We can only conclude that she did not correctly judge her speed or her ability to control her vehicle, and thus her actions in this situation constituted negligence on her part.
Defendant takes the position that should we find her negligent in this matter, and as such liable to the plaintiffs for their losses, the plaintiffs are not entitled to a judgment herein in any event as they have failed to prove their damages with the certainty required by law. She makes *668 three specific objections to the nature of the evidence, or lack of it, offered by the plaintiffs to prove their losses.
First defendant notes that GEICO failed to submit into evidence its policy of insurance covering the plaintiff Leo S. Allen, and from this she concludes that GEICO's claims must fall. Next she points out that no medical testimony or reports were introduced to prove the alleged physical injuries to Mrs. Allen, other than the statements of Mrs. Allen herself. Thus she concludes the claim for the $250.00 by Mrs. Allen in behalf of GEICO must likewise fall. Finally she argues that Mr. Allen's claim for $100.00 and GEICO's claim for $116.29, for the alleged repairs to the vehicle must fall as the only evidence in the record as to the extent of damage to the vehicle was an unsupported damage estimate form accomplished by an independent estimator who did not testify at the trial.
We find no merit in the defendant's first objection that GEICO's failure to introduce its insurance policy with Mr. Allen is fatal to its claims as subrogee and beneficiary under the trust agreement. GEICO did introduce copies of its subrogation agreement with Mr. Allen and its release and trust agreement with Mrs. Allen wherein both acknowledged receipt of the amounts now being claimed by and on behalf of GEICO. Further both Mr. and Mrs. Allen testified in accordance with the statements contained in these agreements. Thus we find that GEICO's status as subrogee and beneficiary has been sufficiently proven, and its failure to introduce the insurance policy itself does not destroy its claims. Travelers Fire Ins. Co. v. Savoy, 82 So.2d 68, La.App. 1 Cir. 1955; Automobile Ins. Co. of Hartford, Conn. v. Barnard, 30 So.2d 142, La.App. 2 Cir. 1947.
We find the defendant's objection to the insufficiency of the evidence introduced to support the claim for $250.00 for bodily injury to Mrs. Allen to have merit. The record reveals that the only supporting evidence for this claim is the following testimony of Mrs. Allen herself:
"Q. After the impact, or, rather, at the time of the impact, what happened to you in the car?
A. I was sitting up against the door and I believe I reared back, but I didn't realize that anything hurt. I just sat there for a few minutes and after my husband got out and talked to the young lady I came out and just crossed the street and stood there until the police came.
Q. Subsequent to the accident, did you have an occasion to see a physician?
A. No.
Q. For any injuries you may have sustained?
A. No.
Q. You did not see a doctor after the accident?
A. After, a doctoryes, I'm sorry.
Q. You did?
A. Yes.
Q. What doctor was it that you saw?
A. Dr. Rabito.
Q. Did he treat you?
A. Yes, for a pulled nerve in my shoulder between the shoulder blades and also Dr. Straus, Ewing and Fisher.
Q. How long did they treat you?
A. Several weeks. I can't recall now.
Q. At the end of that time, were you discharged?
A. Yes.
Q. Now, did you incur any medical expenses as a result of this accident?
A. Yes.

*669 Q. Were these expenses taken care of by an insurance policy that was in existence at that time?
A. Yes, they were."
We find that this testimony alone is insufficient to establish the nature and extent of Mrs. Allen's injury, and of more importance, it did not establish that any injury for which she stated she was later treated was a result of the accident in question. No attempt was made to introduce the testimony of the treating physician or a report from him, nor a statement of his fees for professional services. The fact that GEICO saw fit to pay her this amount does not reduce the burden to establish the injuries with the certainty required by law. We must therefore reject the demand for a $250.00 award.
Finally we reach the claim by GEICO for $116.29 and by Leo S. Allen for $100.00 for the alleged damages to the Allen automobile. In support of these claims plaintiffs introduced a copy of a written itemized estimate form from a concern known as the Independent Appraisal Company. This document was not identiifed or supported by the testimony of the person compiling the estimate or by an agent or employee of the appraisal firm. Certainly under these circumstances we can give no weight to this estimate and it is of no probative value herein.
Mrs. Allen testified that the car was damaged and was repaired. Mr. Allen testified that he paid the repairer $100.00 out of his own pocket, and that GEICO paid $116.29 under its policy coverage. This is virtually the only evidence as to the amount of damage which is of any value to us. While we are not completely satisfied with the evidence, it is uncontroverted, therefore we will accept it as sufficient to establish the amounts to be awarded Mr. Allen and GEICO as his subrogee for the damage to the Allen vehicle.
For the reasons hereinabove assigned the decision of the trial court is reversed, and judgment is now rendered in favor of Leo S. Allen in the sum of $100.00, and in favor of Government Employees Insurance Company in the sum of $116.29. The claim by Helen Allen in behalf of Government Employees Insurance Company is rejected. Defendant-Appellee is to pay all costs.
Reversed and rendered.