BLANCHE, Judge.
This appeal was taken from a judgment of the lower court dismissing plaintiff’s suit for damages arising out of an accident between a motorcycle driven by Roland Joseph and an automobile driven by Mrs. Agnes L. Boudreaux in Thibodaux, Louisiana, on July 14, 1967. Appellant, Sidney Joseph, brought suit individually and on behalf of his minor son Roland Joseph for the personal injuries sustained by his minor son and for the medical expenses and property damage which he incurred as a result of said accident. The case was taken under advisement and in accordance with written reasons, judgment was rendered in favor of defendants dismissing plaintiff’s suit. Being of the opinion that the judgment is erroneous, we reverse for the following reasons.
The record reflects that Roland Joseph was proceeding on his motor bike in a southerly direction on Canal Boulevard, a multilane thoroughfare consisting of three southbound and three northbound traffic lanes separated by a neutral ground, when his motor bike struck the left rear of the Boudreaux vehicle. The Boudreaux vehicle was proceeding in an easterly direction from a shopping center driveway located west of Canal Boulevard. It was Mrs. Boudreaux’s intention to traverse the southbound lanes of Canal Boulevard, pull into and through the neutral ground and then make a left turn to proceed in a northerly direction on Canal Boulevard. The record also reflects that traffic conditions prevented Mrs. Boudreaux’s making the complete maneuver at one time, and it was necessary for her to bring her vehicle to a stop in the neutral ground in order to permit northbound traffic to clear before making her left turn. The record is not clear as to whether Mrs. Boudreaux had, in fact, traversed the southbound lanes and brought her vehicle to a stop in the neutral ground area prior to the accident or whether her vehicle was still moving in an easterly direction at the time thereof. The investigating police officer testified that he detected debris from the accident in the vicinity of the inside, southbound traffic lane of Canal Boulevard, indicating that the rear of the Boudreaux vehicle was protruding into the inside traffic lane thereof. The trial court apparently concluded that the Boudreaux vehicle had not proceeded completely in or through the neutral ground and that the rear of her automobile was partly blocking the southbound traffic lanes on Canal Boulevard. While the trial court did not make an express finding as to whether Mrs. Boudreaux was or was not moving at the time of the accident, it found that in either event plaintiffs were not entitled to recover, stating that (1) if the Boudreaux vehicle were stopped, Roland Joseph was guilty of contributory negligence, and (2) if the Boudreaux vehicle were moving, then Roland Joseph had the last clear chance to avoid the accident. *354 Pertinent here is the following excerpt from the trial judge’s opinion:
“Without going into the question of distances, there seems to be no question that Mrs. Boudreaux saw Roland some distance away. As was pointed out according to the testimony, it could not have been less than a hundred feet. It could have been more. The Court gets the impression that this accident, if Mrs. Boudreaux was stopped as is claimed by the defendants, was due to the fact that Roland Joseph was where he should not have been because when those cars which are trying to get across from one side of the road to the other across the neutral ground stop in that break in that crossover portion of the neutral ground, the rear end of the car can be protruding out into the lane of traffic from which the car had come. It is a hazard. There is no question about the fact that there was a sudden emergency that arose, but if that car was stopped, Roland Joseph could have seen it and he should have seen it, and with no traffic impeding him, the one car in front of him having already made a turn to the right or was making a turn to the right, there is no reason why Roland should not have been able to turn to his right to avoid the tail end of the car which was parked in the crossover section of the neutral ground. If the Boudreaux car was not stopped, then the Court takes the position that from the general topography of the scene of the accident Roland had the last clear chance to avoid the accident because there was nothing impeding him to his right. The car which had been preceding him had already made its turn and he could have turned to the right and avoided the rear end of the Bou-dreaux car. So in either etent [event], whether it was contributory negligence in the event the Boudreaux car was stopped or the last clear chance doctrine to be applied because of the position of Roland in his left lane, the Court holds that the petition should be dismissed.” (Reasons for Judgment)
The other southbound car to which the trial court makes reference in its Reasons for Judgment was that being driven by Johnny Winslow, who testified that at the time of the accident Mrs. Boudreaux’s car was still moving and had not stopped in the neutral ground. Mr. Winslow testified that he was proceeding in the middle, southbound traffic lane and intended to make a right turn into the same shopping center from which Mrs. Boudreaux exited, which turn he, in fact, made. He further testified that he had noticed Roland Joseph following him some 25 to 50 feet to his rear and that when Mrs. Boudreaux entered Canal Boulevard, Mr. Winslow was 50 to 75 feet in front of her with Roland Joseph some 25 to 50 feet behind him.
Roland Joseph testified he was proceeding at about 35 miles per hour in a southerly direction on Canal Boulevard and was following some 25 to 30 feet behind the Winslow vehicle. He further testified he noticed the right turn signal of the preceding vehicle whereupon he moved to the left, at which time he first saw the Boudreaux vehicle in the middle of the highway. Ac-rording to Roland Joseph, the Boudreaux vehicle was moving at the time, and although he tried to avoid it, he was unable to avoid striking the left rear of the Boudreaux vehicle. This plaintiff testified he put on the brakes to his motor bike, blew the horn and even hollered, but as he stated he did not have an opportunity to avoid the accident, and “The only thing I could see was blue and ‘Ponk! ’, that was all.” (Record, page 185)
In contrast Mrs. Boudreaux testified that she observed the Honda motor bike some distance down the road, had no recollection of any vehicle making a right turn off Canal Boulevard and into the shopping center parking area, brought her vehicle to a stop for about half a minute in the neutral ground area awaiting northbound traffic on Canal Boulevard to pass so she could *355 make her left turn, and she was in this stopped position for at least half a minute before the motor bike struck the rear of her car. Her testimony was corroborated by that of her granddaughter, who was nine years old at the time of the accident and who testified that her grandmother had been stopped for a period from “about a half a minute or maybe a minute.”
We are satisfied that a review of the record before us reflects that the trial judge made manifest error in failing to find Mrs. Boudreaux was, in fact, guilty of negligence in traversing the southbound traffic lanes of Canal Boulevard at the time and under the existing circumstances, which negligence was the proximate cause of the accident and resulting damages. The evidence greatly preponderates in favor of plaintiff’s version that Mrs. Boudreaux commenced her traversing of the southbound traffic lanes of Canal Boulevard at a time when such maneuver unduly impeded the flow of traffic enjoying the right of way such as the motor bike being operated by Roland Joseph. It is also beyond question that Mrs. Boudreaux was either still moving and had not yet reached the neutral ground area, as testified by Johnny Winslow and Roland Joseph, or if, in fact, her vehicle was not moving at the time of the accident it had come to a stop only an instant before the accident. No doubt what transpired immediately before the accident was that Mrs. Boudreaux observed the Winslow vehicle with its right turn signal lights on, indicating the vehicle was going to make a right turn into the shopping center area, and upon making this observation, she assumed the way was clear. However, her field of vision and her ability to observe other southbound traffic at that time, such as the Joseph motor bike, was evidently impaired by the Winslow vehicle, and she therefore did not observe the Joseph motor bike until she had already entered Canal Boulevard, at which point it was too late for her to yield the right of way.
The fact remains, however, that it was her duty to yield the right of way to all traffic on Canal Boulevard and to refrain from entering the favored thoroughfare until such time as she could properly observe that no right of way traffic would be impeded by her entering and traversing said thoroughfare, which duties she failed to exercise. Her failure in this regard created the emergency which was the proximate cause of the accident.
Counsel for appellees cites the case of Smith v. Glass, 202 So.2d 367 (La.App. 1st Cir. 1967), writ refused, 251 La. 387, 204 So.2d 573, for the proposition that a motorist is not guilty of negligence in traversing two traffic lanes of a multilane thoroughfare and in stopping in the neutral ground area between the opposite traffic lanes, even though the rear of such motorist’s vehicle protrudes into the inside traffic lane of the lanes traversed, which counsel cites as being factually apposite to the case now before us. A review of our opinion in the Smith case, however, clearly shows that the factual situations are distinguishable in that in Smith we found as a fact that the defendant motorist had traversed the traffic lanes and had stopped in the neutral ground area at a time when such maneuver did not impede the flow of right of way traffic:
“We believe the accident occurred substantially in the manner related by Mrs. Glass, namely, that she negotiated the northbound lanes when they were clear of oncoming traffic, proceeded into the gap in the neutral ground and remained stationary there for some time to permit passage of southbound vehicles.
* * * * * *
“We hold that as a matter of law, it was not negligence on the part of Mrs. Glass to enter the intersection when she did since the record is abundantly clear she did so at a time when it did not impede or interfere with northbound traffic upon Airline Highway. Nor do we find that she was negligent in stopping within the *356 neutral ground under the circumstances existing herein, with two or three feet of her car extending into the inside northbound lane of Airline Highway.” (202 So.2d at 371—Emphasis supplied by this Court)
In Allen v. Baucum, 218 So.2d 662 (La.App. 4th Cir. 1969), our brothers of the Fourth Circuit Court of Appeal, quoting approvingly Smith v. Glass, supra, reached the same conclusion on the basis of a similar factual situation, pointing out, however, the fact that the motorist who stopped in the break in the neutral ground had not impeded right of way traffic:
“It is evident then from the testimony of all the witnesses and parties to the accident, that the Allen vehicle was stationary in the neutral ground for at least IS seconds, and probably longer prior to the collision. Miss Baucum admitted that she had been travelling at a speed of 40 miles per hour. Hence as a matter of simple mathematics we find that Miss Baucum was considerably farther away from the intersection of Bundy Road when the Allen vehicle came to a stop in the neutral ground than the ‘little over a block’ to which she testified.
“Thus we are not involved here with a driver who pulled out into a busy right of way directly in the face of oncoming traffic. Rather we are concerned with a situation where a driver attempted to cross a favored thoroughfare when oncoming traffic was over a block and a half away, even though he did not know if he would be able to complete his crossing maneuver because of traffic in the opposite lanes, with the result that his , vehicle partially blocked one lane of traffic. The oncoming vehicle subsequently collided with the crossing vehicle when the latter was stopped in the neutral ground.” (218 So.2d at 666—Emphasis supplied by this Court)
We feel the case now before us is more like that presented for review in Hurley v. Coleman, 205 So.2d 480 (La.App. 2d Cir. 1967), wherein the Second Circuit Court of Appeal held the conduct of a motorist similar to that of Mrs. Boudreaux to be negligence because of the resulting impediment to favored traffic:
“The conclusion is inescapable, in view of the foregoing statutory rule and jurisprudence, that defendant was negligent in stopping his vehicle in a crossover in such manner that it extended into a traffic lane of the highway at a time and under circumstances which made it impossible for the driver of the approaching vehicle to avoid a collision, particularly in view of the fact that there was adequate space in the crossover for the vehicle to have completely cleared the roadway.” (205 So.2d at 481—Emphasis supplied by this Court)
We are likewise satisfied on reviewing the record that defendants have failed to prove any contributory negligence on the part of Roland Joseph so as to bar the damages sought by the plaintiffs. Roland Joseph was proceeding at a lawful rate of speed on Canal Boulevard and was entitled to assume that traffic on inferior streets or private driveways would yield the right of way and would not attempt to traverse his path if such crossing would unduly impede his right of way. We are satisfied that Roland Joseph was not able to observe the entry of Mrs. Boudreaux onto Canal Boulevard due to the presence of the Winslow vehicle between the Bou-dreaux automobile and the Joseph motor bike until q, few seconds before the accident, at which time Roland Joseph was faced with a sudden emergency and was unable to take any effective evasive action to avoid the accident. Even accepting the estimation of distances by Mr. Win-slow to the effect that there was a span of a hundred feet or slightly more between the Boudreaux vehicle and the Joseph mo-ter bike at the time he saw Mrs. Boudreaux enter Canal Boulevard, it does not follow therefrom that Roland Joseph, in fact, was able to observe the Boudreaux vehicle a hundred feet in front of him due to the *357 impairment of his vision presented by the Winslow automobile. Moreover, traveling at 35 miles per hour, Roland Joseph was proceeding at 51 feet per second, and it is therefore obvious that he would have covered this distance interval in a period of about two seconds. The trial court considered that Roland Joseph should have been able to move his vehicle from the left lane back to the center lane and thereby go around the rear of the Boudreaux vehicle which was blocking his path. We feel, however, that Roland Joseph acted reasonably in the face of the sudden emergency with which he was confronted and to which he had in no way contributed by applying his brakes and blowing his horn. It is well settled that a motorist confronted with a sudden emergency is not held to the same standard of care as a motorist having an opportunity for cool reflection and reasonable evaluation of the circumstances. Here Roland Joseph would have had to have made the instantaneous observation and conclusion that he could safely steer his motor bike from the left lane to the center lane and that such a maneuver would be safer than the conduct he undertook, which would logically have required that he make observation to his rear to be assured that there was no following traffic occupying the middle or outside, southbound traffic lanes. The record fails to support any finding of contributory negligence on the part of Roland Joseph. For the same reasons, in the event the doctrine of last clear chance is properly applicable to a plaintiff,[1] we hold that the record fails to demonstrate that this plaintiff had such a last clear chance so as to bar recovery.
Roland Joseph was examined and hospitalized by Dr. Michael W. Cooper on July 14, 1967, the date of the accident, at which time Dr. Cooper diagnosed this plaintiff to have sustained a fracture of the right radius with evulsion of a small portion of the ulnar styloid of the right wrist, a laceration of the left hand in the web between the thumb and forefinger, and abrasions of the left knee and left ankle. Dr. Cooper performed a closed reduction of the wrist fracture and applied a short arm cast. The laceration was sutured and the abrasions were conservatively treated. The patient was discharged from the hospital five days later and was followed as an outpatient. On August 25, 1967, the cast was removed but the union was still not complete according to Dr. Cooper and physical therapy was prescribed. As of September 11, 1967, the patient had *358 improved sufficiently that Dr. Cooper stated he was able to play high school football provided he used a hand splint. The patient was again seen on September 23, 1967, and on October 18, 1967, and when last seen on December 29, 1967, the plaintiff showed a full range of motion of the right wrist without any abnormal symptoms whatsoever. It was stipulated by and between counsel that plaintiff sustained no residual disability from the accident. Dr. Cooper testified that the type of injury sustained by this plaintiff would have produced considerable pain before the cast was applied but thereafter there would not be much pain, although there would be some stiffness exhibited after the cast was removed until the joint had loosened up again, for which latter difficulty the physical therapy was prescribed. Dr. Cooper also testified that in this particular case no significant muscle atrophy was exhibited. It is obvious from a reading of the record that this plaintiff made a rapid, satisfactory recovery from his injuries and was able to play first string, high school football the following autumn.
The record reflects this plaintiff had obtained summer employment with Terrebonne General Hospital at a rate of pay of $65.00 every two weeks. The plaintiff stopped working as a result of the accident, although he testified it had been his intention to work after school hours and after his football activities. The record reflects that his arm was in a cast for six weeks, and there is nothing to show that he was prevented from working after the cast was removed.
An award of six weeks’ lost earnings at the rate of $65.00 every two weeks or the sum of $195.00 will be allowed.
The remaining items of special damages total $839.77, consisting of the following: Dr. Michael W. Cooper, $174.50; surgical and hospital supplies of Terrebonne, $3.04; Physician’s Physical Therapy Service, $29.-00; Dr. T. A. Gross, $34.75; St. Joseph Hospital, $205.40; repairs to Honda motor bike, $393.08.
Considering the injuries sustained by plaintiff and his recovery therefrom, we feel an award of $1,750.00 general damages is appropriate and will be allowed.
Accordingly, the judgment appealed from is reversed and judgment is rendered in favor of Sidney Joseph, individually, in the sum of $839.77, and in favor of Sidney Joseph, as administrator of the estate of his minor son, Roland Joseph, in the sum of $1,945.00, and against defendants, Harry A. Boudreaux and his wife, Mrs. Agnes L. Boudreaux, in solido, with legal interest from date of judicial demand until paid, all costs of these proceedings assessed to defendants-appellees.
Reversed and rendered.

. The last clear chance doctrine was created to avoid the harsh effects of contributory negligence as a strict bar to a plaintiff’s recovery. It was with a view to circumventing the common law refusal to countenance a theory of comparative fault that the last clear chance doctrine was invented, with the result that while contributory negligence was a defendant’s doctrine, last clear chance became a plaintiff’s doctrine. See, generally, Fleming Torts, 218, 219 (2d ed. 1981); The Last Clear Chance Doctrine in Louisiana—An Analysis and Critique, 27 La.L.Rev. 269. See also Brown v. Louisville and Nashville R. R. Co., 135 F.Supp. 28, 30 (E.D.La.1955), aff’d 234 F.2d 204 (5th Cir. 1956). There appears no justification, therefore, for applying the last clear chance doctrine to a plaintiff as well as to a defendant; some cases have indicated, however, such applicability on the basis that the doctrine represents a “two-edged” sword which the defendant as well as the plaintiff may wield. See, for example, Tauzier v. Bondio, 237 La. 516, 111 So.2d 756 (1959), and Bergeron v. Department of Highways, 221 La. 595, 607, 60 So.2d 4, 8 (1952). Such applicability seems erroneous when it is recognized that this doctrine was only intended to be an escape from the effects of contributory negligence on the part of the plaintiff. Cf. Note 1, Form No. 391, 10 LSA-CCP, Pleadings and Judicial Forms;
“A few defense attorneys specially plead the last clear chance as a defense, but this is both poor pleading and a confusion of the law of torts, as the last clear chance theoretically is available only to a plaintiff. * * * However, when a plaintiff has the ‘last clear chance’ to avoid an accident, his recovery is necessarily barred by his contributory negligence; and there is neither a need, nor the basis, for invoking the doctrine of discovered peril [last clear chance].”