ON REHEARING
Before AYRES, BOLIN, DIXON, PRICE and WILLIAMS, JJ.
AYRES, Judge.
This is an action in tort wherein plaintiffs, Billy Jean Morgan Day, surviving widow of Wimberly Day, appearing in her individual capacity as well as on behalf of her minor child, and Annie Lou Cloud Day Casady, formerly married to but divorced from the deceased, Wimberly Day, appearing for and on behalf of and as tutrix of her two minor children, issue of her marriage with the deceased, seek to recover damages for Day’s accidental death in a motor vehicle collision.
*42 On trial in the district court, the conclusion was reached that the defendant Ruble Wright was free from fault and consequently plaintiffs’ demands against him, his employer, and insurer were rejected. Plaintiffs appealed.
On the initial hearing in this court, the appeal of the surviving widow was dismissed, pursuant to Rule VII, Section 5(b), of the Uniform Rules of the Courts of Appeal, for her failure to appear or file a brief on her behalf prior to the date fixed for submission of the case. This rule provides :
“The court may, ex proprio motu:
“Consider abandoned and dismiss the appeal in any case in which the appellant has neither appeared nor filed brief prior to the date fixed for submission of the case * *
Nevertheless, the hearing proceeded with respect to the demands of plaintiff Annie Lou Cloud Day Casady, the deceased’s former wife. This court, in a panel of three judges, concluded Ruble Wright was guilty of negligence, at least, contributing to the accident, and accordingly reversed the judgment of the trial court and awarded this plaintiff, in her representative capacity as tutrix of her minors, damages in solido against Wright, his employer, and insurer.
Motions for a rehearing were filed and urged not only on behalf of the defendants but on behalf of plaintiff, the surviving widow of the deceased. The motion of the defendants was denied by the panel before whom the case was tried on appeal. Defendants thereafter applied to the Supreme Court for writs of review, which application, we are informed, has been denied.
The motion for rehearing by the surviving widow was granted for the reason that it was established she had no notice or knowledge that the case on appeal had been assigned for a hearing or that the hearing, in fact, had been held. Moreover, it then developed that, after orders of appeal were entered, her counsel surrendered his license to practice law without informing his client of that fact. On that hearing in this court, she was thus unrepresented, though she believed, and had good reason to believe, she had the benefit of counsel, which she had not.
A rehearing having been granted as to the surviving widow, her appeal was again assigned for a hearing. That hearing was had before the court sitting en banc pursuant to a rule of this court that all rehearings would be had before the full court. No objection was made to the trial of this cause on rehearing by the court sitting en banc. All the issues were again urged, including the question pertaining to the fault, if any, of Ruble Wright, which once again became a primary issue in the case.
Mrs. Day, the surviving widow, has, however, contended in a supplemental brief that the question of liability has been foreclosed by the opinion and judgment rendered in this cause between the deceased’s former wife and defendants. No formal plea of res judicata nor one of judicial estoppel has been filed. Nevertheless, this contention is, in our opinion, without merit. The judgment of this court, in a matter between another plaintiff and defendants, is not final as to the present plaintiff-appellant. That question is, as heretofore noted, pending in the Supreme Court on application for writs. Moreover, the adjudication made therein by this court, a matter between a party other than this plaintiff, would, if final, constitute no basis to sustain a motion of res judicata, for, as provided in LSA-C.C. Art. 2286:
“The authority of the thing adjudged takes place only with respect to what was the object of the judgment. The thing demanded must be the same; the demand must be founded on the same cause of action; the demand must he between the same parties, and formed by them against each other in the same quality.” (Emphasis supplied.)
*43 The accident with which we are now concerned occurred after dark, about 7:00 p. m., November 8, 1967, in the vicinity of Salter’s Truck Stop on U.S. Highway 190 about 20 miles west of Baton Rouge. The highway is a main 4-lane thoroughfare with two 13-foot traffic lanes in each'direction. The east- and westbound traffic lanes are separated by a median 17 feet wide. Commercial establishments are located on both sides of the highway with access from one side to the other by a crossover through the median. There was a yellow flashing caution light located approximately 300 feet east of the scene of the accident.
The witnesses traced the location and movements of three vehicles involved or concerned in the occurrence of the accident. One of these was a ton truck, driven by Bobby Ray Smith, which was parked to the north of the highway well off the concrete-paved portion. This was near one of the commercial establishments located in the vicinity of the crossover. This truck was crashed into by the truck in which Day was a passenger. The second vehicle, the one in which Day was riding, was a pickup truck driven by Elvis Frank Hamous, traveling in a westerly direction. The third, a “bobtail” Chevrolet truck driven by Ruble Wright, which had likewise approached the scene from the east, after having been parked north of and well off the highway, was driven through the crossover and parked in a parking area south of the highway.
In a written opinion, the esteemed judge of the trial court thoroughly reviewed the facts and concluded therefrom that Ruble Wright was free from fault, and that Ha-mous’ negligence caused the accident. In the course of his opinion, the trial judge stated:
“According to the deposition of Elvis Frank Hamous, he was driving at about 65 miles per hour in the outside lane for westbound traffic when he saw the truck driven by Wright pull onto the highway from the north shoulder and proceed westerly in the outside lane. At this time, Hamous said that he was about a quarter of a mile away. Hamous testified that he then changed lanes, getting into the inside westbound lane. He also said that in response to the caution light he reduced his speed to under 50 miles per hour. Hamous said that as he was about to pass Wright on Wright’s left, Wright turned left in front of him across the inside lane. Hamous then hit his brakes and pulled his wheel to the right in an attempt to avoid hitting Wright. He said that he cleared the back end of the Wright truck by no more than five feet. He proceeded with brakes on and tires squealing until the collision with the parked truck which impact resulted in Day’s death.
“According to Wright’s testimony, he did not pull onto the highway as Hamous stated, but rather he moved his truck from the north shoulder to the edge of the pavement where he came to a complete stop and looked in both directions preparatory to crossing to the south side of the highway. No vehicles were approaching from the west and only one was approaching from the east and the approaching vehicle from the east was approximately one half a mile away. He stated that he then started out across the westbound lanes at an angle into the crossover and that when he reached the crossover, a vehicle came off of the south shoulder headed east and that he had to stop in the crossover to allow that vehicle to pass. Immediately after the vehicle passed, he started on across the eastbound lanes. At the time the eastbound car was passing, he heard the squealing of brakes a considerable distance east and then they stopped, and that he once again heard brakes squealing as he was completing his crossing of the eastbound lanes. He said that he had driven his truck all the way to the south shoulder and had stopped when he heard the impact.
“Bobby R. Smith testified that he was making a phone call just outside the cafe on the north side of the highway when the accident occurred. He was the driver of the truck into which the pickup truck ran *44 after it went out of control. His testimony was to the effect that Wright’s truck was stopped in the crossover and had the inside westbound lane blocked. He heard the squealing of tires and looked and saw the pickup truck. He did not know how far away the truck was when he first saw it, but that it was pretty far away. He said that the brakes stopped squealing and then started squealing again and then the pickup went on past the Wright truck. He said that the pickup was still going fast when it was out of control.
“The testimony of Sgt. Guerin of the State Police was that the physical evidence, including the damage done to the vehicles and the distance and location of the skid marks, indicated that the pickup truck was traveling at a high rate of speed.
“Daniel A. Horner, who testified that he was standing inside the service station [south of the highway] when he heard the tires squeal, said that he looked out and saw the pickup truck skidding by half off and half on the pavement on the north side of the highway. It was his testimony that the pickup truck was traveling fast. He said that when he then ran out of the station, he saw another vehicle [obviously Wright’s] going off the south side of the highway.
“The statements of Hamous and Wright are divergent in several important respects. And the testimony of the other witnesses is such that the court believes that the version of the accident related by Wright is essentially correct. Hamous says that he had slowed to under 50 miles per hour.
“The testimony of the other witnesses indicates that he [Hamous] was going faster. Hamous says that Wright was turning left moving into the crossover. The other witnesses testified that Wright was stopped in the cross-over with the rear portion of his truck blocking the inside westbound lane. Hamous testified that Wright pulled onto the highway and proceeded some distance west in the outside lane before making a left turn across the inside lane into the crossover. There is no other evidence to substantiate this. Hamous testified that the Wright truck was a big cab with a 50-foot trailer. The other evidence shows that the truck was a flat-bed body 27 or 28 feet long with no trailer. Considering all the evidence, it is the opinion of the court that Wright entered the highway as he testified he did from the north shoulder and that he angled into the crossover.
“The question still remains as to whether Wright entered the highway as he did at a time when it appeared that it was safe to do so. His testimony was that when he moved out to cross the highway no traffic was approaching from the west and only one vehicle was approaching from the east and that the vehicle from the east was approximately one-half mile away. The other evidence corroborates his testimony that the approaching vehicle was some distance away; the fact that the tires squealed twice; the testimony regarding the speed of the pickup truck; and even the testimony of Hamous himself, although Ha-mous said that Wright pulled out into the outside lane and proceeded west in that lane for some distance, he did testify that he was some distance away when Wright pulled out. Consequently, the evidence does indicate that when Wright pulled out to cross the highway, the pickup truck was a considerable distance away. It was not so close as to constitute an immediate hazard and therefore it was not negligence for Wright to begin this maneuver. He cannot be held responsible because the vehicle entering the highway from the south shoulder caused him to stop in the crossover before he could complete the crossing.
“The court is convinced by the evidence in this case that the accident was caused solely by the negligence of Elvis Frank Hamous in driving at an excessive rate of speed in a congested area, in failing to keep a proper lookout so as to discern that Wright was crossing the highway a considerable distance ahead of him rather than entering the outside westbound lane, and in failing to keep his vehicle under control.”
*45 Upon our reconsideration of the evidence contained in the record, we not only fail to find any manifest error in the findings of fact made below or in the conclusions reached therefrom but are of the opinion that the record amply establishes their correctness.
Moreover, it may be noted that it has been held not to be negligence per se for a motorist crossing a multiple-lane highway to traverse one-half of the roadway and stop in the crossover to await passage of traffic on the remaining portion, notwithstanding that the crossover is not sufficiently wide to permit the crossing motorist to stop without any portion of his vehicle extending into the lanes already traversed.
Tauzier v. Travelers Insurance Company, 228 So.2d 754, 756 (La.App., 4th Cir. 1969); Allen v. Baucum, 218 So. 2d 662 (La.App., 4th Cir. 1969); Smith v. Glass, 202 So.2d 367, 371-372 (La.App., 1st Cir. 1967); Portera v. Nicolini, 140 So.2d 752 (La.App., 4th Cir. 1962); Garrett v. Toye Bros. Yellow Cab Co., 58 So.2d 418 (La.App., Orl. 1952).
These authorities also support the proposition that all that is required of a crossing motorist is that, under the circumstances existing at the time, he exercise reasonable care for his own safety as well as that of other motorists proceeding lawfully upon the highway. What constitutes reasonable care is, of course, a matter to be determined in the light of the circumstances of each particular case.
With respect to the movement of Ruble Wright’s vehicle, as established by the evidence and emphasized in the trial judge’s findings, Wright’s vehicle was parked on the north shoulder of the highway near a motel. He walked across the highway to a service station where he made reservations for the night at the motel. He then returned to his truck and, on proceeding in the truck to the edge of the westbound traffic lanes, stopped, made observation as to traffic conditions on both westbound and eastbound traffic lanes of the highway. No traffic was approaching from the west in the eastbound traffic lanes. Only one vehicle, the headlights of which were seen by Ruble Wright and estimated by him to be one-half mile away, was approaching from the east in the westbound traffic lane. He calculated, and his calculation appears reasonable, that he had ample time, with time to spare, to successfully negotiate the crossing of the entire highway. Upon entering the crossover Wright noticed a vehicle, which had been unlighted and seemingly unoccupied, suddenly turn on its lights in the darkness of the night. The vehicle entered the highway and proceeded easterly, blocking Wright’s passageway and causing him to halt before completing his crossing maneuver.
Hamous testified that his truck was a quarter of a mile away when Wright entered the westbound traffic lanes. Wright, whom the trial court believed, testified that, after clearance of his passageway by the vehicle entering the highway from the parking lot, he proceeded to the parking lot where he stopped and parked, and that he was leaving his truck when the collision between the Hamous and Smith vehicles occurred on the north side of the highway.
For these reasons and the reasons stated in the opinion of the trial judge, it follows that we must conclude, as did the trial court, that Wright was free from fault.
This conclusion on the question of liability is, of course, contrary to the conclusions reached on the trial of this cause with respect to the claim of plaintiff Mrs. Annie Lou Cloud Day Casady. A divergence in views as to the question of liability, therefore, exists between this court sitting en banc and a panel of the court.
The right of appellant Mrs. Billy Jean Morgan Day, individually and as representative of her minor child, to apply for a second rehearing is expressly reserved.
The judgment appealed, rejecting the demands of Billy Jean Morgan Day, indi- *46 vidtially and as representative of her minor child, and dismissing her suit at her cost, is affirmed.
Affirmed.
WILLIAMS, J., respectfully dissents for the reasons set forth in our original opinion.